UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| IN RE: MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO ELITE MEDICAL WELLNESS, LLC | § § § § § § § § § § § § | MISC. ACTION NO. |
| **LANDON PERRY,** *Plaintiff,* v. **HALLIBURTON ENERGY SERVICES, INC.,** *Defendant.* | § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:23-CV-04441 CURRENTLY PENDING IN THE UNITED STATED DISTRICT COURT SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO NON-PARTY ELITE MEDICAL WELLNESS, LLC**

Movant-Defendant Halliburton Energy Services, Inc. ("Halliburton") respectfully submits the following memorandum in support of their Motion to Compel Compliance with Subpoena Directed to Elite Medical Wellness, LLC, ("Elite"). The subpoena was issued in the case of *Landon Perry v. Halliburton Energy Services, Inc.*, Case No. 4:23-cv-04441; currently pending in the United States District Court for the Southern District of Texas (Houston Division), and was served on Elite on July 31, 2024.[1]

---

[1] A true and correct copy of the subpoena is attached as Exhibit 1.

# **TABLE OF CONTENTS**

I.  PREFATORY STATEMENT ................................................................................................ 1

II. FACTUAL BACKGROUND............................................................................................... 2

   1.   Medical funding arrangements create financial incentives for medical providers to give diagnoses and testimony favorable to plaintiffs and to inflate their charges. ............................ 2

   2.   Elite, Access, and A&I have a long-standing and ongoing financial relationship. ............. 3

      A.   Elite routinely treats personal injury plaintiffs represented by A&I and testifies on their behalf. ................................................................................................................................ 3

      B.   A&I refers plaintiffs to Access who refers them to Elite then purchases Elite's accounts receivable at contractually agreed amounts. ............................................................................ 4

   3.   Elite's providers have given diagnoses and testimony favorable to Plaintiff and are poised to do the same at trial. ................................................................................................................ 5

   4.   Elite's diagnoses and opinions permeate the entirety of Plaintiff's damages claims.......... 5

   5.   Elite failed to serve objections in a timely manner. ........................................................... 6

III. ARGUMENT & AUTHORITIES....................................................................................... 7

   1.   The discovery Movant seeks is relevant to both the bias of Elite's testifying experts and the reasonable value of the services they provided. ................................................................. 7

   2.   Elite has waived all objections............................................................................................ 10

   3.   In the alternative, Elite should produce all responsive documents and communications for *in camera* review and they should be made part of the appellate record. ..................................11

IV. CONCLUSION AND PRAYER .......................................................................................11

CERTIFICATE OF CONFERENCE ........................................................................................ 12

CERTIFICATE OF SERVICE .................................................................................................. 12

**CASES**

*Barnes v. Dolgencorp, LLC.*,
   No. CV 22-2179, 2023 WL 7403450, at *5 (E.D. La. Nov. 9, 2023) .................................. 7

*Boutte v. Elite Medical Wellness, et al*,
   No. 2:24-mc-00011 ............................................................................................................ 4

*Boutte v. Elite Medical Wellness, et al*,
   No. 4:25-cv-00138 ............................................................................................................. 4

*Boutte, Jr. v. Jackson Offshore Operators, LLC et al*,
   No. 4:22-cv-00948 ............................................................................................................. 4

*Douga v. D&B Boat Rentals, Inc.*,
   No. 04-1642, 2007 WL 677202, at *1 (W.D. La. Feb. 28, 2007).................................... 10

*Houston v. Publix Supermarkets, Inc.*,
   No. 1:13-CV-206, 2015 WL 4581541, at *1 (N.D. Ga. Jul. 29, 2015) ............................. 8

*In re: American Medical Systems, Inc.*,
   MDL No. 2325, 2016 WL 3077904, at * (S.D.W. Va. May 31, 2016)............................. 8

*McClain v. Sysco New Orleans, et al.*,
   No. 19-1801 C/W 19-3283, 2020 WL 11028497, at *10 (E.D. La. Jul. 17, 2020). .......... 3

*McClain v. Sysco New Orleans*,
   No. CV 19-1801, 2020 WL 11028497, at *7–8, 10–11 (E.D. La. July 17, 2020)............. 7

*Michael Johnson, et al v. Packaging Corp. of America, et al.*,
   No. 3:18-613-SDD ............................................................................................................ 4

*ML Healthcare Services, LLC v. Publix Super Markets, Inc.*,
   881 F.3d 1293, 1296 (11th Cir. 2018). ............................................................................. 8

*Rangel v. Anderson*,
   No. 2:15-cv-81, 202 F.Supp.3d 1361, 1373 (S.D. Ga. Aug. 23, 2016) ............................. 8

*Tarleton v. DG Louisiana LLC*,
   No. 6:20-CV-00294, 2022 WL 2347346, at *4–5 (W.D. La. June 29, 2022).................... 7

*Thomas v. Chambers*,
   No. CV 18-4373, 2019 WL 8888169, at *3–4 (E. D. La. Apr. 26, 2019) ......................... 8

**Statutes:**

Fed. R. Civ. P. 45 .................................................................................................................. 10

Fed. R. Evid. 401(a)) ............................................................................................................ 10

Fed. R. Evid. 403 ................................................................................................................. 10

# I.  PREFATORY STATEMENT

In the underlying litigation, Plaintiff Landon Perry, a Halliburton employee, alleges he is a seaman entitled to the maritime remedies of maintenance and cure.  He alleges both physical and mental injuries resulting from an incident occurring on a dock in Port Fourchon, Louisiana, on April 22, 2023.  Plaintiff's counsel has disclosed Dr. Patrick Hayes, a psychiatrist and the owner of Elite, in Lake Charles, Louisiana, as a non-retained testifying expert.  Dr. Hayes has diagnosed Plaintiff with post-traumatic stress disorder (PTSD), insomnia, and erectile dysfunction, which Dr. Hayes claims were caused by the incident on the dock.

Plaintiff is represented in the underlying case by the law firm of Arnold & Itkin, LLP ("A&I").  The evidence in that case indicates that A&I referred Plaintiff to a medical funding company called Access Healthcare Management ("Access") with whom it has a longstanding financial relationship.  Similarly, Access referred Plaintiff to Elite with whom it has a longstanding financial relationship.  Elite sells its accounts receivable, including those relating to Plaintiff, to Access at a significant discount.  A&I then pays Access out of any settlement or judgment in a case.

Movant contends Dr. Hayes is a biased witness with a financial interest in a favorable resolution for Plaintiff in the underlying case, rather than the neutral and disinterested "treating physician" Plaintiff is attempting to portray him as.  Dr. Hayes has a financial motive to provide favorable diagnoses and testify favorably for Plaintiff to continue securing a steady stream of personal injury plaintiffs as patients from Access, and, by extension, from A&I.

The documents and communications Movant seeks, and which Elite has refused to produce, are relevant to Dr. Hayes' credibility, or lack thereof, and to the reasonable value of the medical services Elite rendered to Plaintiff.

## II. FACTUAL BACKGROUND

**1. Medical funding arrangements create financial incentives for medical providers to give diagnoses and testimony favorable to plaintiffs and to inflate their charges.**

A medical funding company "serves as an investor in the lawsuit…" *Rangel v. Anderson*, 202 F.Supp.3d 1361, 1373 (S.D. Ga. 2016) (citing *Houston Publix Supermarkets, Inc.*, No. 1:13-CV-206, 2015 WL 4581541, at *2 (N.D. Ga. Jul. 29, 2015)). While slight variations exist, the typical funding and factoring scheme works like this:



Personal injury firms refer plaintiffs to medical funding companies. Those companies then refer plaintiffs to selected doctors who provide treatment and sell their accounts receivable to the funding companies. The plaintiffs' lawyers then designate those doctors as non-retained testifying experts to try to pass them off as neutral and disinterested treating physicians. The doctors then testify favorably for the plaintiffs at deposition and at trial in the hope of securing additional plaintiffs from the funding companies. The plaintiffs, the lawyers, and the funding companies then get paid out of any settlement or judgment, and the cycle begins anew with the next case. Needless to say, this creates significant financial incentives for the doctors to provide diagnoses and testimony helpful to plaintiffs. As one court has put it:

> The bigger plaintiffs' recovery in this matter, the more [the funding and factoring company] will collect on the outstanding receivable. [The company] might be inclined to make future purchases from medical providers whose accounts receivable result in better recovery, and this might give the medical providers an

> incentive to give testimony that is favorable to a finding of liability and a bigger damages award.  Further, the emails submitted by defendants indicate that [the company] may approve funding of additional medical treatment, which could similarly give medical providers a bias in favor of testimony that would support a bigger recovery for the plaintiffs.  If [the company] is confident it will ultimately be able to collect the amount funded from the plaintiff because she will prove liability at trial and obtain a big damages award, then [the company] might be more willing to approve funding.  The physician, who understandably hopes to be paid for work performed, might be inclined to testify favorably to a plaintiff on causation and damages so that [the company] will be more likely to approve funding of medical treatment in the future and/or purchase that doctor's receivables at a higher rate for the next plaintiff or the next time the contract is negotiated.  Certain that she has a guaranteed return on services performed by virtue of the funding agreement, the physician may be motivated to overtreat; at the very least, guaranteed that she will recover X% of the billings without having to defend them, the physician may be motivated to overbill.

*McClain v. Sysco New Orleans, et al.*, No. 19-1801 C/W 19-3283, 2020 WL 11028497, at *10 (E.D. La. Jul. 17, 2020).

### 2. Elite, Access, and A&I have a long-standing and ongoing financial relationship.

#### A. Elite routinely treats personal injury plaintiffs represented by A&I and testifies on their behalf.

A review of Dr. Hayes' testimony history shows that he testified on behalf of plaintiffs represented by A&I approximately 50 times between 2016 and 2024.  *See* Ex. 2, Testimony History.  This is almost four times as much as the next most frequent law firm.  *Id*.  Dr. Hayes does not dispute these numbers.  *See* Ex. 3, Hayes Dep. 145:20-146:7; 150:14-21.

As one glaring example of how A&I and Elite/Dr. Hayes are joined at the hip, A&I represents 23 plaintiffs in multidistrict litigation currently pending in state district court in Harris County, Texas.  *See* Ex. 4, Transocean MDL Brief, at p. 2.  Of those 23 plaintiffs, A&I sent 21 of them—from all over the country—to see Dr. Hayes at his Elite clinic location in Lake Charles.[2]  *Id*. at Attachment A ("Most Seen Medical Providers"); Attachment B ("Plaintiffs' Residences").

---

[2] Nineteen of those plaintiffs also saw Dr. Hayes' clinical staff at Elite.  *Id*. at Attachment A ("Most Seen Medical Providers").

3

Dr. Hayes likewise testified for an A&I plaintiff in April 2024 in the Middle District of Louisiana. *See Michael Johnson, et al v. Packaging Corp. of America, et al.*, No. 3:18-613-SDD, in the U.S. District Court for the Middle District of Louisiana.

And, in addition to the instant case, Defendant is aware of at least one other case pending in the Southern District of Texas in which Dr. Hayes has seen a plaintiff represented by A&I (there are likely more). *See Boutte, Jr. v. Jackson Offshore Operators, LLC et al*, No. 4:22-cv-00948, in the U.S. District Court for the Southern District of Texas. Elite and Dr. Hayes are attempting to resist discovery in that case, much as they are attempting to do in this case. *See Boutte v. Elite Medical Wellness, et al*, No. 2:24-mc-00011, in the U.S. District Court for the Western District of Louisiana; *Boutte v. Elite Medical Wellness, et al*, No. 4:25-cv-00138, in the U.S. District Court for the Southern District of Texas.

### B. A&I refers plaintiffs to Access who refers them to Elite then purchases Elite's accounts receivable at contractually agreed amounts.

Dr. Hayes gave deposition testimony in the multidistrict litigation refenced above where he described the relationship between A&I, Access, and Elite. *See* Ex. 5, Hayes MDL Dep. **"My particular relationship in this case… is with Access Healthcare Management,"** Dr. Hayes noted. *Id*. at 44:20-23. **"I think they have a relationship with Arnold & Itkin,"** he continued. *Id*. at 44:25-45:1. **"And then if there's a case that Access needs to send to a psychiatrist or an addictions or a cognitive doc, Access sends them to me,"** he explained." *Id*. at 45:1-3.

When asked whether Access would pay his office directly, Dr. Hayes responded: "That's correct, yes, sir." *Id*. at 57: 14-16. And, when asked about the method of compensation, Dr. Hayes testified that **"we have a contracted rate for their case management, which is a percentage of the fees, consistent with any of the case managers that I've worked with over the years, but that's going to be defined in the contract."** *Id*. at 57:21-25.

The contract between Access and Elite, titled a "Lien and Receivables Purchase and Assignment Agreement," reflects that **Access has agreed to purchase Plaintiff's accounts receivable for fifty cents on the dollar for services involving clinical care**. *See* Ex. 6, Lien and Receivables Purchase and Assignment Agreement, Sec. 3.

Records produced from Elite thus far indicate Access referred Plaintiff to Elite on August 28, 2023. *See* Ex. 7, Referral Docs. In deposition testimony in this case, Dr. Hayes admitted that he has been testifying for plaintiffs represented by A&I for the past 9 or 10 years. *See* Ex. 3, Hayes Dep. at 147:6-20. And, Access is involved in the multidistrict litigation in Harris County in exactly the same way in which it is involved here—sending A&I clients to Elite, purchasing Elite's accounts receivable, and waiting for a settlement or judgment to settle up with A&I. *See* Ex. 4, Transocean MDL Brief, at p. 8-9.

3. **Elite's providers have given diagnoses and testimony favorable to Plaintiff and are poised to do the same at trial.**

Not surprisingly, Elite and Dr. Hayes have issued diagnoses favorable to Plaintiff and Dr. Hayes has provided testimony favorable to Plaintiff at his deposition (and will do the same at trial). Dr. Hayes testified that Plaintiff's diagnoses include post-traumatic stress disorder, clinical insomnia, erectile dysfunction, and post-burn pain and itch related to burns of the genital area. *See* Ex. 3, Hayes Dep. at 60:11-19. With respect to the alleged erectile dysfunction, Dr. Hayes' diagnoses morphed over time from a diagnoses based on physical conditions to one based on both physical and psychiatric conditions, allegedly. *Id*. at 61:4-62:11.

4. **Elite's diagnoses and opinions permeate the entirety of Plaintiff's damages claims.**

Plaintiff is attempting to pass off Elite's medical providers, including Dr. Hayes, as neutral and disinterested third-party "treating physicians." *See* Ex. 8, Plaintiff's Expert Designations. These providers will testify regarding the extent of Plaintiff's purported psychiatric injuries,

5

causation (i.e., that the accident at issue here caused those injuries), and the reasonableness of their charges. The fact that Plaintiff is attempting to portray Elite's medical providers as neutral and disinterested treating physicians makes the discovery Movant seeks all the more important to the defense of its case.

Plaintiff has also designated a retained Life Care Planner (Dr. Shelly Savant) and economic damages experts (Jeffrey Meyers and Harold Asher). *Id*. Dr. Savant relies heavily on Dr. Hayes' opinions regarding allegedly necessary future medical care for Plaintiff to arrive at the conclusion that Plaintiff will require between $570,813.12 and $599,563.12 in such care. *See* Ex. 9, Plaintiff's Life Care Plan, at Summary Page. A&I coordinated with Elite to provide Dr. Savant with information she needed when developing her Life Care Plan. *See* Ex. 14, A&I Email re Life Care Plan.

Likewise, Plaintiff's lost past and future earning capacity (and the amount of future maintenance payments to which he might be entitled) are likewise impacted by Dr. Hayes' opinion that Plaintiff is unable to reliably show up for work and complete a full workday. *See* Ex. 3, Hayes Dep. at 85:22-86:1. The longer Plaintiff is out of work as a result of the accident, after all, the higher the sum of maintenance payments to which he is presumably entitled.

And, of course, Dr. Hayes' psychiatric opinions regarding post-traumatic stress disorder, insomnia, erectile dysfunction, and pain are clearly relevant to Plaintiff's claims for non-economic damages such as mental anguish and pain and suffering.

5. **Elite failed to serve objections in a timely manner.**

Elite produced documents in response to Movant's subpoena on August 14, 2024. Elite did not serve any objections but failed to produce all responsive documents. Because Elite's document production was deficient, Movant sent Elite correspondence on December 9, 2024, addressing the deficiencies. *See* Ex. 10, Letter to Elite.

On January 6, 2025, Elite purported to serve "Amended Responses" to Movant's subpoena, despite never having served original responses or objections. *See* Ex. 11, Email from Elite; Ex. 12, Amended Responses. Elite's so-called "Amended Responses" purported to assert blanket objections to several of Movant's documents requests. *See* Ex. 12, Amended Responses. They also referred Movant to a fee schedule that was not produced. *Id*.

Movant then sent correspondence to Elite's counsel regarding the continued deficiencies. *See* Ex. 13, Letter to Elite's Counsel. Elite did not respond.

### III. ARGUMENT & AUTHORITIES

**1. The discovery Movant seeks is relevant to both the bias of Elite's testifying experts and the reasonable value of the services they provided.**

Courts in Louisiana and across the country have consistently held that evidence of medical funding arrangements is relevant and discoverable because it goes both to the bias of the plaintiff's testifying medical providers and the reasonableness of their charges, both of which are in dispute in this case. *See e.g.*, *Barnes v. Dolgencorp, LLC.*, No. CV 22-2179, 2023 WL 7403450, at *5 (E.D. La. Nov. 9, 2023) (finding records reflecting purchase of plaintiff's medical accounts receivable from his doctor by a factoring company relevant to the doctor's potential bias); *Tarleton v. DG Louisiana LLC*, No. 6:20-CV-00294, 2022 WL 2347346, at *4–5 (W.D. La. June 29, 2022) (holding medical factoring records "relevant to bias, credibility, and the reasonableness of Plaintiff's medical bills")[3]; *McClain v. Sysco New Orleans*, No. CV 19-1801, 2020 WL 11028497, at *7–8, 10–11 (E.D. La. July 17, 2020) (finding that "accounts receivable by factoring companies

---

[3] Here, while Elite produced a billing statement reflecting charges, it failed to produce, for example, the checks or other proofs of payment showing how much Elite was paid and by whom. *See* Ex. 15, Billing Statement. And. Dr. Hayes testified at his deposition that the reference to "Patient Check" is a misnomer, as Plaintiff is not actually funding his medical treatment. *See* Ex. 3, Hayes Dep. at 50:10-17. Movant contends Elite has charged inflated rates (particularly in light of the fact that Access only pays Elite 50 percent of billed amounts) to artificially inflate Plaintiff's medical costs.

are one of the most lucrative of the options" to cover "the cost of plaintiff's treatment"); *Thomas v. Chambers*, No. CV 18-4373, 2019 WL 8888169, at *3–4 (E. D. La. Apr. 26, 2019) (finding records relating to medical funding agreement relevant because "[t]he financial arrangement between plaintiffs' healthcare providers and the third-party funding companies could create an incentive for plaintiffs' treating physicians to want plaintiffs to win their case, because a victory could result in more referrals… [and] [t]hat incentive could lead a jury to question the treating physicians' testimony regarding causation"); *In re: American Medical Systems, Inc.*, MDL No. 2325, 2016 WL 3077904, at * (S.D.W. Va. May 31, 2016)  (finding document and deposition subpoenas to third-party factoring companies sought relevant information relating to financial motive, credibility, and damages); *Houston v. Publix Supermarkets, Inc.*, No. 1:13-CV-206, 2015 WL 4581541, at *1 (N.D. Ga. Jul. 29, 2015) ("Testimony about [the medical factoring company's] relationship with [the plaintiff's] doctors is admissible for the purpose of attacking the credibility of their opinions"); *Rangel v. Anderson*, No. 2:15-cv-81, 202 F.Supp.3d 1361, 1373 (S.D. Ga. Aug. 23, 2016) ("the medical funding company's] involvement in Plaintiff's treatment is highly relevant to the issue of Plaintiff's treating physician's credibility and potential bias").

Perhaps the most direct and comprehensive treatment Defendant has found comes from the United States Court of Appeals for the 11th Circuit, which examined the precise issue presented here and affirmed the same arguments Defendant makes through this motion.  See **ML Healthcare Services, LLC v. Publix Super Markets, Inc., 881 F.3d 1293, 1296 (11th Cir. 2018).**

During discovery, the defendants in that case learned that ML Healthcare Services would contract with doctors to provide medical care for personal injury plaintiffs with viable tort claims, refer plaintiffs to those doctors, purchase the accounts receivable from the doctors for that medical care, then seek payment for those accounts receivable from any settlement or judgment.  *Id*.

8

Furthermore, the doctors would testify at the plaintiff's trial concerning the extent and cause of her medical injuries. *Id*. The defendant sought to introduce evidence at trial of the relationship between the doctors and ML Healthcare Services (a medical funding and factoring company) "to show that Plaintiff's doctors were biased in their testimony and that Plaintiff's claimed medical expenses were unreasonable." *Id*.

As a starting point, **the district court "concluded that the business model used by ML Healthcare, which included the fronting of medical expenses for plaintiffs to the treating doctors that ML Healthcare had selected, was 'highly relevant and probative' as to the bias of those doctors, as well as the reasonableness of the medical bills."** *Id*. at 1299. The trial court therefore allowed the defendant to introduce evidence at trial of the relationship between the doctors, ML Healthcare Services, and the plaintiffs ML Healthcare Services had referred to those doctors. *Id*. Following an eight-day trial, the jury returned a verdict for the defendant, and the plaintiff and ML Healthcare Services appealed, claiming the trial court erred in initially requiring them to produce evidence regarding their relationship, then allowing that evidence to be introduced at trial. *Id*. at 1296.

**The defendant's theory of bias in *ML Healthcare Services* is identical to Defendants' theory of bias in this case**—that the agreements between a plaintiff, his or her lawyers, and the medical funding and factoring companies "creates the risk of bias on the part of doctors who receive referrals from [the funding and factoring companies] and who subsequently testify on behalf of the plaintiffs they have treated pursuant to those referrals." *Id*. at 1301. The risk of bias exists "because if a doctor did not provide a favorable causation analysis—which is necessary to win a tort action—[the funding and factoring companies] likely would find other doctors who would." *Id*. Therefore, "in order to continue to receive referrals from [the medical funding and

9

factoring companies]—and the guaranteed income stream they generate—the treating doctors have an incentive to provide analyses that help these patients—and, by extension, [the medical funding and factoring companies]—win their case." *Id*.

Finding that the trial court did not err in permitting evidence of the payment arrangement to be admitted at trial to show the testifying doctors' bias, the 11th Circuit held that:

- **"[T]he evidence was relevant,"** as **"[i]ndeed, proof of bias will typically be relevant."** *Id*. at 1302 (citing *Abel*, 469 U.S. at 52 ("Proof of bias is almost always relevant because, the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of the witness' testimony.")).

- In order to probe potential bias, **the defendant "needed only to show that [the medical funding and factoring company's] payment arrangement had 'any tendency' to make bias more probable than it would be without the evidence**," and finding that requirement "easily satisfied here." *Id*. (citing Fed. R. Evid. 401(a)).

- While the plaintiff argued that none of her doctors admitted to bias while testifying, the Court of Appeals noted that was "hardly a surprising revelation," and, in any event, "[a] witness's refusal to admit bias does not bar the opposing party from introducing evidence that might contradict such a protestation." *Id*.

- The trial court's determination that the probative value of the evidence of the agreements at issue outweighed any potential for prejudice to the plaintiff was not in error. *Id*. at 1303 (citing Fed. R. Evid. 403).

2. **Elite has waived all objections.**

Elite has waived its objections to Movant's document requests by failing to timely serve them. *See e.g.*, *Douga v. D&B Boat Rentals, Inc.*, No. 04-1642, 2007 WL 677202, at *1 (W.D. La. Feb. 28, 2007) ("Absent extension or good cause, failure to timely respond to interrogatories, production requests, or other discovery efforts generally constitutes a waiver of any objections thereto."); *see also* Fed. R. Civ. P. 45.

10

3. In the alternative, Elite should produce all responsive documents and communications for *in camera* review and they should be made part of the appellate record.

Should the Court deny Movant's motion, Movant respectfully requests that the Court conduct an *in camera* review of the documents and communications sought herein and that they be made a part of the court's records such that they will be available for appellate review.

## IV. CONCLUSION AND PRAYER

For these reasons, Movant Halliburton Energy Services, Inc. respectfully requests that the Court grant this motion and compel Elite Medical Wellness to produce all documents and communications responsive to Movant's subpoena.

Respectfully submitted,

MAHTOOK & LAFLEUR
(A Professional Law Corporation)


BY:  /s/ Richard J. Hymel
      RICHARD J. HYMEL (#20230)
      Post Office Box 3089
      600 Jefferson Street, Ste. 1000
      Lafayette, LA  70501
      Telephone:   (337) 266-2189
      Telefax:       (337) 266-2303
      rhymel@mandllaw.com
Counsel for HALLIBURTON ENERGY SERVICES, INC.

O<small>F</small> C<small>OUNSEL</small>

A<small>HMAD</small>, Z<small>AVITSANOS</small> & M<small>ENSING</small>, PLLC

Joseph Y. Ahmad
Texas State Bar No. 00941100
*\* Pro hac vice application forthcoming*
joeahmad@azalaw.com
Rey Flores
Texas State Bar No. 24068777
*\* Pro hac vice application forthcoming*
rflores@azalaw.com
Sammy Ford
Texas State Bar No. 24061331
*\* Pro hac vice application forthcoming*
sford@azalaw.com
1221 McKinney, Suite 2500
Houston, Texas 77010
Telephone: 713-665-1101
Facsimile: 713-655-0062

## CERTIFICATE OF CONFERENCE

I certify that counsel for Defendant attempted to confer with counsel for Elite Medical Wellness, LLC, but received no response.

                                                     */s/ Richard J. Hymel*
                                                     Richard J. Hymel

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 31, 2024, a true and correct copy of the foregoing document was served on all counsel of record by electronic service.

                                                     */s/ Richard J. Hymel*
                                                     Richard J. Hymel