```
                IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF LOUISIANA
                      LAKE CHARLES DIVISION


HALLIBURTON ENERGY              *  Docket No. 2:25-mc-015
SERVICES, INC.                  *
                                *
VERSUS                          *  March 26, 2025
                                *
                                *
ELITE MEDICAL WELLNESS          *  Lake Charles, Louisiana

*****************************************************************

             OFFICIAL TRANSCRIPT OF MOTION HEARING
          BEFORE THE HONORABLE THOMAS P. LEBLANC,
               UNITED STATES MAGISTRATE JUDGE

*****************************************************************

                    A P P E A R A N C E S

FOR THE PLAINTIFF:    REIES M. FLORES
                      Ahmad Zavitsanos & Anaipakos
                      1221 McKinney, Suite 3460
                      Houston, TX 77010


                      RICHARD J. HYMEL
                      Mahtook & Lafleur
                      P.O. Box 3089
                      Lafayette, LA 70502



FOR THE DEFENDANT:    ROBERT P. WYNNE
                      Wynne Firm
                      3701 Kirby, Suite 760
                      Houston, TX 77098



REPORTED BY:          DEIDRE D. JURANKA, CRR
                      USDC - Western District of LA
                      611 Broad Street
                      Lake Charles, LA 70601
```

COURT PROCEEDINGS

1

01:35PM   2    THE COURT:  This is Case No. 2:25-mc-00015 on the

01:35PM   3  docket of this Court.  I have before me this afternoon a

01:35PM   4  motion to compel compliance with subpoenas directed to

01:35PM   5  non-parties.  That is Document 1 on the docket of this

01:35PM   6  matter.  We also have Elite Medical Wellness, LLC's

01:36PM   7  motion for protection which is Document No. 3 on the

01:36PM   8  docket of this matter.  We'll take up both of those

01:36PM   9  issues here today.  Before we get started, if I could

01:36PM   10  have appearances of counsel for the record, please.

01:36PM   11    MR. FLORES:  Ray Flores and Richard Hymel for

01:36PM   12  Halliburton, Your Honor.

01:36PM   13    MR. WYNNE:  Good afternoon, Judge.  Bob Wynne,

01:36PM   14  W-Y-N-N-E, on behalf of the respondent, Elite Medical

01:36PM   15  Wellness, LLC.  At counsel table with me is a client

01:36PM   16  representative, Caitlin McGroarty.  Dr. Patrick Hayes

01:36PM   17  would be here but he's in the middle of some treatment

01:36PM   18  issues that he could not get out of today, so

01:36PM   19  Ms. McGroarty is here on his behalf.

01:36PM   20    THE COURT:  Thank you, Mr. Wynne.  Let's go ahead

01:37PM   21  and we'll take up the motion to compel compliance first.

01:37PM   22  Mr. Flores, it's your motion.

01:37PM   23    MR. FLORES:  Yes, Your Honor.  Your Honor, there's

01:37PM   24  an underlying case here in the Southern District of

01:37PM   25  Texas.  Landon Perry is the plaintiff there.  He has

Deidre D. Juranka, CRR
United States Court Reporter
Western District of Louisiana

01:37PM   1    filed suit against Halliburton, our client, alleging

01:37PM   2    essentially personal injury claims.  Mr. Perry's

01:37PM   3    represented in that case by the law firm of Arnold &

01:37PM   4    Itkin, and Arnold & Itkin has a standing process or

01:37PM   5    relationship whereby they -- with a funding company

01:37PM   6    called Access Healthcare Management.  So they routinely

01:37PM   7    send the plaintiffs to Access Healthcare Management who

01:37PM   8    then refers them to Elite Medical Wellness for

01:37PM   9    psychiatric or psychological treatment.  Elite Medical

01:38PM  10    Wellness, primarily Dr. Hayes, then provides that

01:38PM  11    treatment; and Access Healthcare Management then

01:38PM  12    purchases Elite's accounts receivable.  Arnold & Itkin,

01:38PM  13    the plaintiff's firm, eventually settles up with Access

01:38PM  14    Healthcare Management after a settlement or judgment in

01:38PM  15    a case.

01:38PM  16       So it's this pipeline of plaintiffs from the

01:38PM  17    plaintiff's firm through Access Healthcare Management to

01:38PM  18    Elite Medical Wellness; and it's our contention and our

01:38PM  19    belief that Dr. Hayes' and Elite's reliance on that

01:38PM  20    steady stream of patients, who happen to be personal

01:38PM  21    injury plaintiffs, gives rise to a bias.  It causes

01:38PM  22    Elite's medical providers, including Dr. Hayes, to issue

01:38PM  23    favorable diagnoses, favorable to the plaintiff, to

01:38PM  24    opine that the plaintiff will need future medical care

01:38PM  25    far beyond what is reasonable, and then to opine that

01:39PM 1    their charges for the services they rendered are usual,

01:39PM 2    customary, and reasonable.  They do so and Dr. Hayes

01:39PM 3    does so in order to secure that stream of patients from

01:39PM 4    Access Healthcare Management and, by extension, from

01:39PM 5    Arnold & Itkin.

01:39PM 6         And this is not just speculation, Your Honor.

01:39PM 7    Based on the evidence uncovered in the underlying case,

01:39PM 8    we know that Dr. Hayes has testified on behalf of Arnold

01:39PM 9    & Itkin clients more than 50 times between 2016 and

01:39PM 10   2024.  That is more than four times as many times as the

01:39PM 11   next most frequent law firm customer of his.  He's also

01:39PM 12   given testimony in this multidistrict litigation in

01:39PM 13   Texas in which he's laid out the fact and he's admitted

01:39PM 14   the fact that he has a relationship with Access

01:39PM 15   Healthcare Management.  He's testified in this case that

01:39PM 16   they refer him patients, and he's also testified that

01:40PM 17   Access does have this relationship with the law firm of

01:40PM 18   Arnold & Itkin.

01:40PM 19        So this isn't just speculation, Your Honor; and our

01:40PM 20   understanding is it's not the first time that this Court

01:40PM 21   actually addresses this exact issue.  In the *Boutte*

01:40PM 22   matter of last year, the same issues were present.  The

01:40PM 23   same respondent, Elite Medical Wellness, was present.

01:40PM 24   And they were also represented by Mr. Wynne at that

01:40PM 25   point.  So I believe Your Honor is familiar with what

01:40PM  1    we're talking about here.

01:40PM  2         Now, in this case, not surprisingly, Dr. Hayes has

01:40PM  3    issued favorable opinions and diagnoses related to

01:40PM  4    Mr. Perry, the plaintiff in the underlying case.  He's

01:40PM  5    given favorable deposition testimony and we expect he's

01:40PM  6    going to give favorable trial testimony because of this

01:40PM  7    bias that is inherent in this medical funding and

01:40PM  8    factoring arrangement that is in place.  And Dr. Hayes's

01:41PM  9    opinions permeate the entirety of the damages case for

01:41PM  10   the plaintiff.

01:41PM  11        They, of course, cover past medical damages.  He's

01:41PM  12   identified or he's opined that Mr. Perry has PTSD,

01:41PM  13   insomnia, and an erectile dysfunction that is at least

01:41PM  14   in part due to psychological issues.  So they cover past

01:41PM  15   medicals.  He's also opined that Mr. Perry will need

01:41PM  16   medication, various types of medication, for the rest of

01:41PM  17   his life.  And this is a 21-year-old individual, or so.

01:41PM  18        The life care planner that the plaintiff's firm has

01:41PM  19   retained to address future medical needs relies heavily

01:41PM  20   on Dr. Hayes's opinions.  It's about a $570,000 life

01:41PM  21   care plan for future medical needs.  Of that amount,

01:41PM  22   384,000 are attributable to Dr. Hayes's opinions on

01:41PM  23   future medical care.

01:42PM  24        Additionally, Dr. Hayes has opined that Mr. Perry,

01:42PM  25   the plaintiff, cannot hold down a job reliably which, of

01:42PM  1    course, impacts his lost earning capacity.  They have

01:42PM  2    retained an economic damages expert who has opined that

01:42PM  3    the earning capacity for the remainder of Mr. Perry's

01:42PM  4    life is about two and a half million dollars.  So if

01:42PM  5    Dr. Hayes were to testify, for example, that Mr. Perry

01:42PM  6    will forever be impacted in his ability to hold down a

01:42PM  7    job, potentially that's a two and a half million dollar

01:42PM  8    claim specifically relying on Dr. Hayes's testimony.

01:42PM  9         So we served a subpoena on Elite Medical Wellness

01:42PM  10   back in, I believe it was, July of last year.  They

01:42PM  11   responded in August.  They did not assert any

01:42PM  12   objections, but they also did not produce all the

01:42PM  13   documents that were responsive to the subpoena.  They

01:43PM  14   produced, essentially, medical records and one billing

01:43PM  15   summary or billing statement and that was it.  So we

01:43PM  16   sent them correspondence addressing the deficiencies in

01:43PM  17   their production.  I think they then retained Mr. Wynne

01:43PM  18   and they purported to assert amended responses to our

01:43PM  19   subpoena even though they'd never before served any

01:43PM  20   responses much less objections.  Those amended responses

01:43PM  21   included blanket objections to certain of our document

01:43PM  22   requests in the subpoena, and they're standing by those

01:43PM  23   objections which is why we're here today.

01:43PM  24        THE COURT:  Mr. Flores, with respect to the amended

01:43PM  25   responses, did they produce any additional documentation

01:43PM 1    in response to that subpoena?

01:43PM 2        MR. FLORES:  They did produce a little bit of

01:43PM 3    additional documentation, Your Honor.

01:43PM 4        THE COURT:  What else was included at this point?

01:43PM 5        MR. FLORES:  They included one e-mail which would

01:43PM 6    show the referral from Access Healthcare Management to

01:43PM 7    Elite Medical Wellness of Mr. Perry.  That was on

01:44PM 8    August 28, 2023.  They included an e-mail thread with

01:44PM 9    three or four e-mails between Arnold & Itkin and Elite

01:44PM 10   Medical Wellness.  They were seeking to have Dr. Hayes

01:44PM 11   sign a summary of the conversation that he'd had with

01:44PM 12   the plaintiff's life care planner regarding future

01:44PM 13   medical needs, and that was signed and returned to the

01:44PM 14   plaintiff's firm.  Those are the two things that come to

01:44PM 15   mind that were included, Your Honor.  There may be a bit

01:44PM 16   more, but that's what comes to mind.

01:44PM 17       And so, Your Honor, this isn't really a novel

01:44PM 18   issue.  There's caselaw in Louisiana in the Eastern

01:44PM 19   District and the Western District addressing the

01:44PM 20   discoverability and the relevance of medical funding and

01:44PM 21   factoring agreements.  We've cited that caselaw in our

01:45PM 22   motion.  The *Barnes* case, the *Tarleton* case, and the

01:45PM 23   *Sysco* case come to mind out of Louisiana.  They all held

01:45PM 24   that these arrangements, these agreements, evidence

01:45PM 25   related to these agreements is relevant to, number one,

01:45PM  1    the reasonable value of the services that were provided

01:45PM  2    and, number two, the bias of the treating physicians.

01:45PM  3        As far as reasonable value goes, Your Honor, Elite

01:45PM  4    and the plaintiff's firm in the underlying case are

01:45PM  5    presenting damages based solely on the amount that was

01:45PM  6    charged.  However, we believe that what was ultimately

01:45PM  7    paid to Elite was half the amount that was charged.

01:45PM  8    However, we don't have the underlying documentation

01:45PM  9    establishing the payments that were made, who made them.

01:45PM  10   Our belief is Access Healthcare Management paid at

01:45PM  11   50 percent of the billed amount.  We need the documents

01:45PM  12   to show that to a jury and to fully understand what is

01:46PM  13   going on here, and that would go to what the provider

01:46PM  14   has agreed to accept as payment which would be an

01:46PM  15   indicator of the reasonable value of the services as

01:46PM  16   opposed to what was paid.

01:46PM  17       Additionally, evidence regarding the relationship

01:46PM  18   between Elite Medical Wellness, Access Healthcare

01:46PM  19   Management, and the plaintiff's firm is relevant to show

01:46PM  20   the bias of Dr. Hayes.  Now, notably, the plaintiff's

01:46PM  21   firm has designated him as a non-retained testifying

01:46PM  22   expert.  So he's going to be testifying.  He's going to

01:46PM  23   be on the stand.  He's going to be giving his opinions

01:46PM  24   regarding the severity of Mr. Perry's psychiatric

01:46PM  25   injuries, the debilitating impact, and the causation

01:46PM  1    related to the injury, as well as future medical needs

01:46PM  2    and reasonable cost of those services.  And so they're

01:47PM  3    attempting to pass him off as a non-retained expert as

01:47PM  4    opposed to what he really is which is a retained

01:47PM  5    litigation expert.  He's testified for the same

01:47PM  6    plaintiffs firm over 50 times.  This isn't a doctor that

01:47PM  7    just happened to -- Mr. Perry just happened to walk into

01:47PM  8    one day for treatment.  This is a pipeline of patients

01:47PM  9    that are referred to this specific doctor.  And so we

01:47PM  10   are seeking to discover documents that show how many

01:47PM  11   referrals has Elite received from Access that are Arnold

01:47PM  12   & Itkin clients and, essentially, what is the total

01:47PM  13   revenue that it's derived from those referrals, those

01:47PM  14   patients.

01:47PM  15        THE COURT:  Mr. Flores, let me ask you, the

01:47PM  16   subpoena has 22 requests, what I'm going to call a

01:47PM  17   request for production, associated with it.  Can you

01:48PM  18   narrow for me, are there any of those 22 that

01:48PM  19   Halliburton is willing or prepared to say those have

01:48PM  20   been answered, Judge, they're not at issue?

01:48PM  21        MR. FLORES:  Yes, Your Honor.  I think I've broken

01:48PM  22   it down, essentially, into four categories of documents

01:48PM  23   now.  If I can address it that way, that might be

01:48PM  24   productive.  Number one is a full copy of the agreement

01:48PM  25   between Elite and Access Healthcare Management.  They

01:48PM  1     didn't produce it in response to the subpoena.  We were

01:48PM  2     able to get an incomplete copy through other means so --

01:48PM  3     and I think they've agreed to produce a complete copy

01:48PM  4     which would include any exhibits, addendums, amendments,

01:48PM  5     and so on, as long as there's a protective order in

01:48PM  6     place.  So I think that we're probably in agreement on

01:48PM  7     there.  If there are any other agreements besides that

01:48PM  8     particular contract, we'd like to know about those as

01:48PM  9     well.  We'd like copies of those as well.  So that would

01:48PM  10     be the first category of documents, Your Honor.

01:49PM  11          THE COURT:  So that last comment you said, if there

01:49PM  12     are any other agreements, say that --

01:49PM  13          MR. FLORES:  So if there are any other contracts

01:49PM  14     relating to the plaintiff that Elite Medical has, we'd

01:49PM  15     like to have those as well.  We're aware of one contract

01:49PM  16     that it has with Access Healthcare Management.  But if

01:49PM  17     there are others that we don't know of, we'd like copies

01:49PM  18     of those as well.

01:49PM  19          THE COURT:  Okay.  Now, I'm looking at the joint

01:49PM  20     submission regarding discovery requests that the parties

01:49PM  21     submit pursuant to our hearing notice of local rules.

01:49PM  22     That agreements relating to the plaintiff, looks to me

01:49PM  23     like you've identified Requests 7 through 9 and 18

01:49PM  24     through 20 with respect to that group of documents.

01:49PM  25     Does that sound correct?

01:49PM  1      MR. FLORES:  That sounds right.  Yes, Your Honor.

01:49PM  2      THE COURT:  So with respect to the actual agreement

01:49PM  3  between Elite Medical and Access Healthcare and any

01:49PM  4  other similar type arrangements or agreements that

01:50PM  5  relate to the plaintiff, that would cover those six

01:50PM  6  requests?

01:50PM  7      MR. FLORES:  Yes, Your Honor.

01:50PM  8      THE COURT:  7, 8, 9, 18, 19, and 20?

01:50PM  9      MR. FLORES:  Correct.  The second category of

01:50PM  10  documents, Your Honor, if you'd like for me to proceed.

01:50PM  11      THE COURT:  Yeah, absolutely.

01:50PM  12      MR. FLORES:  As I messaged earlier, they produced a

01:50PM  13  billing summary but it doesn't show who paid and how

01:50PM  14  much they paid.  It does show that -- certain check

01:50PM  15  numbers.  So each entry on this billing summary which is

01:50PM  16  one of the exhibits to our motion has check numbers so

01:50PM  17  we know a payment was applied, but we don't know in what

01:51PM  18  amount and by whom.  So we figure they must have at a

01:51PM  19  minimum the checks that they received or, if it was an

01:51PM  20  electronic transaction, some sort of electronic record

01:51PM  21  showing the money coming in.  So we'd like whatever

01:51PM  22  proofs of payment they have relating to the plaintiff,

01:51PM  23  whether it's those checks or something else.

01:51PM  24      THE COURT:  So again, back at your joint

01:51PM  25  submission, that would appear to be the first category

01:51PM 1   that identifies Requests 6, 16 and 21.  Does that

01:51PM 2   sound --

01:51PM 3        MR. FLORES:  Yes, sir, that sounds right.

01:52PM 4        THE COURT:  Okay.

01:52PM 5        MR. FLORES:  The third category would be

01:52PM 6   communications relating to the plaintiff.  Elite's

01:52PM 7   response to the joint submission entry says that there

01:52PM 8   are at a minimum scheduling e-mails.  So we know those

01:52PM 9   exist.  Those seem to be relatively easy to gather so we

01:52PM 10  want those scheduling e-mails.  If there are

01:52PM 11  communications with the plaintiff himself, those would

01:52PM 12  be responsive.  And any communications with the

01:52PM 13  plaintiff's counsel or their staff or representatives

01:52PM 14  would also be responsive to the subpoena.

01:53PM 15       THE COURT:  And that would be Requests 10, 11, 12?

01:53PM 16       MR. FLORES:  Yes, Your Honor.

01:53PM 17       THE COURT:  All right.

01:53PM 18       MR. FLORES:  And for the fourth category, Your

01:53PM 19  Honor, this would be documents or communications showing

01:53PM 20  amounts that were paid for services that were provided

01:53PM 21  to other Arnold & Itkin clients who were seen by Elite

01:53PM 22  Medical.  And it's limited to the same years as

01:53PM 23  Mr. Perry received treatment, so that would be 2023

01:53PM 24  through 2025.  And jumping ahead a bit, I think there is

01:53PM 25  or there's going to be some sort of undue burden

01:53PM   1      argument here.  Much of this, it seems to us, should

01:53PM   2      have already been done in response to the order to

01:54PM   3      compel pretty much exactly this same information in the

01:54PM   4      *Boutte* case.  I believe there's been references to how

01:54PM   5      Elite doesn't categorize or file its materials by

01:54PM   6      patients being Arnold & Itkin clients, for example.  So

01:54PM   7      we're happy to provide a list of patients that we know

01:54PM   8      of, which is 40 or 50 of them given that Dr. Hayes has

01:54PM   9      testified at least 50 times for Arnold & Itkin clients

01:54PM   10     in the last few years.  So we can provide that list with

01:54PM   11     specific names and that should facilitate any search for

01:54PM   12     their files, and then it shouldn't be that difficult to

01:54PM   13     figure out how much was paid with respect to each of

01:54PM   14     those plaintiffs.  And this is very similar, in fact

01:54PM   15     narrower, Your Honor, than the discovery that was

01:55PM   16     ordered from Elite in the *Boutte* case just last year.

01:55PM   17          THE COURT:  That last category, that's Request 14,

01:55PM   18     Subsections C and D, correct?

01:55PM   19          MR. FLORES:  Correct, Your Honor.

01:55PM   20          THE COURT:  All right.  Now, having gone through

01:55PM   21     that exercise, Mr. Flores, is the Court then to

01:55PM   22     understand that it is your client's position that any of

01:55PM   23     the other requests that we have not identified, you're

01:55PM   24     satisfied with the response that you've received to date

01:55PM   25     with respect to those requests?

01:55PM   1        MR. FLORES:  Yes, Your Honor.

01:55PM   2        THE COURT:  All right.  So show me -- let me make

01:56PM   3    sure I'm reading this correctly, Mr. Flores.  This last

01:56PM   4    category you identified with respect to payments to

01:57PM   5    Elite Medical by Arnold & Itkin on respect -- on behalf

01:57PM   6    of other clients of Arnold & Itkin, where is that in

01:57PM   7    your requests?

01:57PM   8        MR. FLORES:  So it would be encompassed by 14C and

01:57PM   9    14D, Your Honor, given that all of these patients were,

01:57PM  10    we believe, routed through Access Healthcare Management.

01:57PM  11    So the contract that we know exists between Elite and

01:57PM  12    Access, this is essentially a letter of protection or

01:57PM  13    some sort of deferred compensation agreement so it would

01:57PM  14    fall under there or, if they're considered uninsured, if

01:57PM  15    Access is not acting as an insurer but is nonetheless

01:58PM  16    referring them there and covering their bills, then they

01:58PM  17    would be considered uninsured under 14C.

01:58PM  18        THE COURT:  The concern I have is 14 is not limited

01:58PM  19    to Arnold & Itkin clients.  I don't see anything that

01:58PM  20    limits the scope of the patients for whom you're seeking

01:58PM  21    this type of information --

01:58PM  22        MR. FLORES:  Your Honor, we're willing --

01:58PM  23        THE COURT:  -- which is a concern for me.

01:58PM  24        MR. FLORES:  Sure.

01:58PM  25        THE COURT:  So, first of all, looking at 14, is

01:58PM   1    Halliburton prepared to limit that request to this
01:58PM   2    information as it relates only to patients who were
01:58PM   3    referred by Arnold & Itkin?
01:58PM   4         MR. FLORES:  Yes, Your Honor, we are.
01:59PM   5         THE COURT:  And again, further to that question, I
01:59PM   6    do anticipate that Mr. Wynne is going to advise the
01:59PM   7    Court that Elite does not maintain their patient records
01:59PM   8    in some format that would allow them to search for
01:59PM   9    Arnold & Itkin as a referral source within those
01:59PM   10   records, based on my prior experience.  Maybe that's
01:59PM   11   changed.  Maybe it hasn't.  So assuming that I would
01:59PM   12   allow this discovery, it's going -- it would have to be
01:59PM   13   limited to those persons that you can identify as Arnold
01:59PM   14   & Itkin clients.  You would appreciate that?
01:59PM   15        MR. FLORES:  I do, Your Honor.
01:59PM   16        THE COURT:  And you've offered to provide that list
01:59PM   17   if we get to that point.
01:59PM   18        MR. FLORES:  Yes, sir.
01:59PM   19        THE COURT:  All right.  Mr. Flores, I think I have
02:00PM   20   what I need from you at this point.  Is there anything
02:00PM   21   else you wish to offer?
02:00PM   22        MR. FLORES:  No, Your Honor, not on the documents.
02:00PM   23   I assume we'll address the deposition issue later.
02:00PM   24        THE COURT:  We'll take that up.  All right.
02:00PM   25   Mr. Wynne.

02:00PM  1        MR. WYNNE:  Good afternoon, Judge.  Nice to see you

02:00PM  2   again.  Seems like we spent a lot of time there

02:01PM  3   bad-mouthing a lot of people, and I'm more than happy to

02:01PM  4   address all of that.

02:01PM  5        THE COURT:  Mr. Wynne --

02:01PM  6        MR. WYNNE:  But if you want to just get straight to

02:01PM  7   the document requests, I can do that as well.

02:01PM  8        THE COURT:  -- I'm immune to the discussions about

02:01PM  9   who is or is not a bad actor in this case.  That's not

02:01PM  10  the issue that's before me.  So to the extent that there

02:01PM  11  needed to be some background for purposes of determining

02:01PM  12  to what degree these requests may be relevant to the

02:01PM  13  underlying litigation, that was allowed.

02:01PM  14       MR. WYNNE:  Fair enough.

02:01PM  15       THE COURT:  You can address it if you want to

02:01PM  16  but --

02:01PM  17       MR. WYNNE:  I don't think I need to.  I'll just say

02:01PM  18  that I've been addressing that same issue against this

02:01PM  19  same law firm against about a dozen doctors who aren't

02:01PM  20  Elite Medical across all of Texas and now into

02:01PM  21  Louisiana.  In fact, Mr. Flores and I, this is at least

02:02PM  22  our third time arguing something very similar.  The only

02:02PM  23  thing that I would point out background-wise about this

02:02PM  24  case is a few things that you didn't hear.

02:02PM  25       Mr. Perry, the Jones Act seaman, his case right now

02:02PM   1    is a maintenance and cure which is purely almost like a

02:02PM   2    workers' comp.  Does his employer pay his bills or not,

02:02PM   3    his medical bills.  What happened to him is, and I'm

02:02PM   4    going to say this with full discretion, is he got very

02:02PM   5    severely burned, second degree burns across his penis

02:02PM   6    and his genitalia.  Okay.  Based on that, he has not had

02:02PM   7    sexual intercourse of any kind in about two years.  He

02:02PM   8    was diagnosed with PTSD arising from those work-related

02:02PM   9    burn injuries, and he has erectile dysfunction that is

02:03PM  10    in part physical but also is in part mental.

02:03PM  11        Dr. Patrick Hayes and Elite Medical have been

02:03PM  12    treating Mr. Perry for his psychiatric problems,

02:03PM  13    primarily those two diagnoses, since September of 2023.

02:03PM  14    So any sort of assertion that this is like some make

02:03PM  15    believe injury, something that's not severe, that's just

02:03PM  16    not correct.  In fact, this man has had multiple skin

02:03PM  17    grafts to his genitalia, all of which has dramatically

02:03PM  18    and drastically affected his life.  We didn't hear much

02:03PM  19    about that at the beginning.  I think that's worth

02:03PM  20    noting.  So Dr. Hayes has treated this gentleman for

02:03PM  21    about a year and a half, a total of 35 visits, only one

02:03PM  22    of which was with Dr. Hayes himself; the other ones were

02:03PM  23    with his nurse practicer.  The total amount of medical

02:04PM  24    charges by Elite Medical is under $20,000.  Okay.

02:04PM  25        They already know a lot of what they just brought

02:04PM  1    up.  This gentleman was a referral from Access

02:04PM  2    Healthcare.  Access Healthcare pays half of that, and

02:04PM  3    they're entitled to half of the billed charges because

02:04PM  4    they manage the scheduling and the arrangements for the

02:04PM  5    patient; and that is the agreement.  Dr. Hayes has never

02:04PM  6    shied from that.  He's freely admitted it for years.

02:04PM  7    And when Mr. Flores was up here it almost seemed like he

02:04PM  8    forgot the deposition he'd taken on January 9th of this

02:04PM  9    year, a four-hour deposition of Dr. Hayes where

02:04PM  10   Dr. Hayes explained all of this.  He explained who

02:04PM  11   Access Healthcare is, how the arrangement works, how the

02:04PM  12   split works.

02:05PM  13        In fact, the agreement that they say they need they

02:05PM  14   already had at the deposition.  He said by other means.

02:05PM  15   I don't know what those other means are.  I think I have

02:05PM  16   an idea and I think it's -- if you remember the *Boutte*

02:05PM  17   case, the counselor in that case had represented

02:05PM  18   Transocean in the Asgard matter prior to Mr. Flores's

02:05PM  19   firm.  That gentleman had been disqualified from that

02:05PM  20   case, and then he appeared on behalf of the movant in

02:05PM  21   that *Boutte* matter.  He used materials from the Asgard

02:05PM  22   case in this case.  He did not have permission to do so.

02:05PM  23   The offshore plaintiff in that case, their lawyer, found

02:05PM  24   out about that and brought that back to the attention of

02:06PM  25   the Asgard court.

02:06PM   1        THE COURT:  Mr. Wynne, we're getting fairly far

02:06PM   2   afield from what we're here for today.

02:06PM   3        MR. WYNNE:  Yeah.  Here's the bottom line.  If they

02:06PM   4   want the agreement with Access Healthcare, they can have

02:06PM   5   it.  The only thing we would ask is can we get a

02:06PM   6   protective order that allows us to disclose it to them

02:06PM   7   without violating our agreement with Access in limiting

02:06PM   8   their use of that to this case only.  If we can have

02:06PM   9   that, we will produce a copy Bates labeled to them and

02:06PM  10   that should answer the sort of first document request.

02:06PM  11        THE COURT:  Well, the first request includes any

02:06PM  12   other agreements or arrangements.

02:06PM  13        MR. WYNNE:  There are none.  There are none.

02:06PM  14        THE COURT:  Has that been stated in a response,

02:06PM  15   signed under verification?

02:06PM  16        MR. WYNNE:  Dr. Hayes testified to it in his

02:06PM  17   deposition, that the agreement that they have is the

02:07PM  18   only agreement that exists relating to this gentleman.

02:07PM  19   I don't know how I can be more clear.  That's the

02:07PM  20   answer.  If you want us to verify it in writing again

02:07PM  21   and have it notarized, we will.

02:07PM  22        The other document requests that we would have

02:07PM  23   responsive documents to are scheduling e-mails between

02:07PM  24   lower level administrative staff at Elite and lower

02:07PM  25   level administrative staff at Access Healthcare.  So

02:07PM   1    what will happen is we may get an e-mail saying -- you
02:07PM   2    know, at the beginning of the week saying, hey, we have
02:08PM   3    appointments for these eight people.  Mr. Perry may be
02:08PM   4    one of those eight people.  That's all there is.  And so
02:08PM   5    if the Court needs us to go redact all those and produce
02:08PM   6    it to satisfy their allegations against us, we're more
02:08PM   7    than happy to do that; but that's all there will be and
02:08PM   8    it's going to be one line that says a gentleman's name,
02:08PM   9    Mr. Perry, on a date and then it'll have the e-mail
02:08PM   10   correspondence.
02:08PM   11        THE COURT:  Mr. Wynne, let me just stop at that
02:08PM   12   point there because I think it's a good example of what
02:08PM   13   I see is an issue in the way this is happening.  You've
02:08PM   14   made the argument that that's all there are, are these
02:08PM   15   e-mails, and you're expecting the party whose issued the
02:08PM   16   subpoena to accept that statement as opposed to you
02:08PM   17   producing those e-mails because they are responsive to
02:09PM   18   the request and in a certified or otherwise verified
02:09PM   19   response saying this is all the documentation that I
02:09PM   20   have in response to that request.  If Elite had done
02:09PM   21   that, we wouldn't be here today.
02:09PM   22        MR. WYNNE:  And, Your Honor --
02:09PM   23        THE COURT:  That's my concern.  And I want to know,
02:09PM   24   I mean, do you think that that -- that giving that
02:09PM   25   response is somehow -- Elite shouldn't have to have done

02:09PM  1    that?  That's what I want to know.

02:09PM  2         MR. WYNNE:  So if we go back to when the original

02:09PM  3    subpoena was served, there's no lawyers involved here.

02:09PM  4    This is a records custodian.  And if you look at

02:09PM  5    anything in their subpoena, just like in *Boutte*, there's

02:09PM  6    no mention of Access.  If there was, we would have

02:09PM  7    produced that.  The first time Access was mentioned here

02:09PM  8    was in this motion.

02:09PM  9         THE COURT:  It doesn't matter.  They don't need to

02:09PM  10   know that Access exists.  If the question is we want any

02:10PM  11   and all agreements that you have with third parties that

02:10PM  12   pertain to treatment you provide to Mr. Perry in this

02:10PM  13   case, I don't have to -- why do they have to spell out

02:10PM  14   for you it's got to be Access or it's got to be Unum or

02:10PM  15   it's got to be whatever other company they come up with?

02:10PM  16        MR. WYNNE:  My understanding --

02:10PM  17        THE COURT:  Response is you need to produce what's

02:10PM  18   responsive to that request unless you can tell me as the

02:10PM  19   Court that somehow that exceeds the scope of discovery

02:10PM  20   or it's otherwise subject to limitation by the Court,

02:10PM  21   but that seems like a fairly relevant question with

02:10PM  22   regard to this individual's treatment.

02:10PM  23        MR. WYNNE:  I believe --

02:10PM  24        THE COURT:  I don't understand your focus on just

02:10PM  25   Access.  I know that's the battle that's going on.  I

02:10PM  1    mean, as I made the statement earlier to one of my law

02:10PM  2    clerks, you guys are engaged in a war.  Okay.  I've got

02:10PM  3    a skirmish in front of me right now and it's this

02:11PM  4    subpoena; and my goal is to determine whether or not

02:11PM  5    what's in this subpoena is relevant and subject to

02:11PM  6    discovery and, if it is, why it hasn't been responded to

02:11PM  7    appropriately.

02:11PM  8         MR. WYNNE:  It was our understanding reading that

02:11PM  9    subpoena that we got that it had nothing to do with

02:11PM  10   these issues, scheduling communications from Access

02:11PM  11   Healthcare to us.  We produced the stuff that we had

02:11PM  12   with the plaintiff's lawyer.  We produced all the

02:11PM  13   medical records.  The only thing we have would be these

02:11PM  14   scheduling e-mails.  And, like I said in the joint

02:11PM  15   reply, we will redact out the other people's names and

02:11PM  16   produce all that; but it seems to me it's a very large

02:11PM  17   waste of our time.  But that's the objection to that.

02:11PM  18        THE COURT:  Well, the problem with that position,

02:11PM  19   Mr. Wynne, is, again, you're asking the Defense to

02:12PM  20   simply accept your representation that all that exists

02:12PM  21   are these communications that are simply scheduling

02:12PM  22   e-mails.  Their request, for example, Request No. 11,

02:12PM  23   says all communications relating to or concerning

02:12PM  24   plaintiff.  You ought to have those available.  And if

02:12PM  25   all that is is some scheduling e-mails, then great.

02:12PM  1    Produce that and say this is all I've got.

02:12PM  2         MR. WYNNE:  Okay.

02:12PM  3         THE COURT:  Right.  But to not produce anything and

02:12PM  4    to tell them, well, the reason why we're not producing

02:12PM  5    it is because we've decided that this is all we have and

02:12PM  6    we don't think it's relevant and worth our time and

02:12PM  7    effort, I've got a problem with that because they're

02:12PM  8    going to come stand in front of me and do exactly what

02:12PM  9    they're doing and say, Judge, they didn't give us

02:12PM  10   anything.  We know there's got to be some communications

02:12PM  11   out there.  We're not getting anything.  So you're

02:12PM  12   putting me in a bit of a box to have to deal with that.

02:12PM  13   Make sense?

02:13PM  14        MR. WYNNE:  It does make sense, and I see it from

02:13PM  15   that perspective.  I think our issue is the people who

02:13PM  16   originally respond to these subpoenas at medical offices

02:13PM  17   are not lawyers and they don't necessarily -- they see

02:13PM  18   this and they do what they traditionally do which is

02:13PM  19   produce the medical records, the billing records, and

02:13PM  20   what they believe or understand to be the request.  And

02:13PM  21   it wasn't until this process began that counsel

02:13PM  22   identified, no, we want stuff related to Access

02:13PM  23   Healthcare.  And it was at that point that we responded,

02:13PM  24   well, this is what we have and we can do that.

02:13PM  25        THE COURT:  Here's the difficulty that I do have,

02:13PM 1      Mr. Wynne, from that perspective, is because this is not

02:13PM 2      Elite Medical Wellness's first time around this track,

02:13PM 3      so to speak.  And I'm not going to tell you how to

02:13PM 4      represent your client by any stretch; but if it were me,

02:13PM 5      I would have instructed them last time the next time you

02:14PM 6      get one of these call me first.  Right.  I can't excuse

02:14PM 7      the fact that they simply decide to respond without a

02:14PM 8      lawyer being involved.  That doesn't make the responses

02:14PM 9      any more excusable.  I mean, how do I deal with the fact

02:14PM 10     that they respond and they didn't raise any objections

02:14PM 11     to any of these categories, they just chose which ones

02:14PM 12     to respond to and which ones not and what to produce in

02:14PM 13     response to those?

02:14PM 14         MR. WYNNE:  What I would say to that, Your Honor,

02:14PM 15     is they made a good faith effort to produce what they

02:14PM 16     believed to be responsive based on the language of the

02:14PM 17     requests themselves.  And once we understood that what

02:14PM 18     they were seeking was something broader than what was

02:14PM 19     written, that's when we acknowledged, hey, this is what

02:14PM 20     would be responsive.  At that point in time the Court

02:14PM 21     had already been involved in the process.

02:14PM 22         THE COURT:  Well, I see it a little differently

02:14PM 23     because I see it as though you're trying to narrow the

02:14PM 24     scope of what was requested.  I mean, if I ask for -- if

02:14PM 25     I ask for, let me find one of these in here, all

02:15PM   1    contracts or other agreements relating to plaintiff, if
02:15PM   2    they ask for all medical funding agreements relating to
02:15PM   3    or concerning the plaintiff, that doesn't mean I just
02:15PM   4    want Access's, that means if you've got any other
02:15PM   5    agreements in place with any other party.
02:15PM   6            MR. WYNNE:  I understand that.
02:15PM   7            THE COURT:  So to me, you read that, if Access is
02:15PM   8    the only one that you had, they should have known we
02:15PM   9    need to produce that agreement.  So I'm having a hard
02:15PM  10    time following this.  I can't excuse your client because
02:15PM  11    they chose to proceed without a lawyer.  Pro se
02:15PM  12    litigants are subject to the same rules and same
02:15PM  13    obligations as are represented clients.  So that's a
02:15PM  14    problem that they have created for me in this context.
02:15PM  15    So what I need from you is I need you to tell me we've
02:15PM  16    gone through -- they've narrowed the areas of request
02:15PM  17    that they want.  And to Halliburton's credit in this
02:15PM  18    case, these are much narrower and much more focussed
02:16PM  19    requests than what we dealt with in the *Boutte* matter.
02:16PM  20            MR. WYNNE:  I agree with that.
02:16PM  21            THE COURT:  If nothing else, they've learned
02:16PM  22    something from that.  I need you to tell me why they're
02:16PM  23    not entitled to this information that they've requested.
02:16PM  24            MR. WYNNE:  So the first part, the agreement with
02:16PM  25    Access Healthcare, that is going to be the single

02:16PM    1    agreement and we can produce that copy.  We would just
02:16PM    2    ask for a protective order giving us authority to do it,
02:16PM    3    limiting it to use in this case to cover us, our
02:16PM    4    agreement with Access.
02:16PM    5         THE COURT:  And I don't see such an order to be an
02:16PM    6    unreasonable request, and I'll pose that to Mr. Flores
02:16PM    7    here in just a moment.  But I also, you know, from that
02:16PM    8    perspective, would require some sort of, again,
02:16PM    9    certified response that that's the only agreement so
02:16PM   10    that if we find out down the road that that's not true
02:17PM   11    I've got somebody that's in a position to be held -- to
02:17PM   12    be sanctioned for, you know, what they've done or not
02:17PM   13    done in this case, if that makes sense.
02:17PM   14         MR. WYNNE:  Fair enough.  For all the responses,
02:17PM   15    Your Honor, what we would do is we would do that same
02:17PM   16    certification, a sworn, notarized, however you wanted to
02:17PM   17    do it, to say, hey, these are the complete set of
02:17PM   18    documents that exist.
02:17PM   19         In terms of the communications, it's going to be
02:17PM   20    those scheduling documents.  So what we would do,
02:17PM   21    propose doing, is just redacting those to take out other
02:17PM   22    people's names.
02:17PM   23         THE COURT:  Again, I'm not telling you to tell me
02:17PM   24    exactly what's going to be produced because I'm not
02:17PM   25    going to limit you and issue an order that says all you

02:17PM  1    have to do is produce the scheduling e-mails.  What I
02:17PM  2    want is if the request is all communications relating to
02:17PM  3    or concerning the plaintiff, and that's Request No. 11,
02:17PM  4    I need you to tell me why you shouldn't have to respond
02:18PM  5    to that fully.  And if you can't tell me, Judge, there's
02:18PM  6    no reason why I shouldn't respond to that, then my
02:18PM  7    answer's going to be respond to it.
02:18PM  8          MR. WYNNE:  Your Honor --
02:18PM  9          THE COURT:  If what your response ultimately is is
02:18PM  10   that you produce a stack of scheduling e-mails and you
02:18PM  11   say this is everything, then it is what it is; and that
02:18PM  12   will be Halliburton's problem if they think they can
02:18PM  13   come back and show me what you've given is not fully
02:18PM  14   responsive.
02:18PM  15         MR. WYNNE:  That's understood, Your Honor.  We will
02:18PM  16   supplement that response and amend that to produce all
02:18PM  17   the communications, not just stuff with plaintiff's
02:18PM  18   counsel or Arnold & Itkin or with the plaintiff himself,
02:18PM  19   anything that has to do with him.
02:18PM  20         THE COURT:  So Mr. Flores has identified for me
02:18PM  21   that they're still looking for responses to items 6, 7,
02:18PM  22   8, 9, 10, 11, 12, 14C and D, 16, 18, 19, 20, and 21.  I
02:19PM  23   need to know which ones of those Elite Medical Wellness
02:19PM  24   thinks it has a legitimate basis for not responding to
02:19PM  25   or if you've already responded to it and you think that

02:19PM  1    that response is complete.

02:19PM  2         MR. WYNNE:  I believe the only one that we would

02:19PM  3    object to would be the last one, 14C and 14D, payments,

02:19PM  4    you know, relating to other individuals who are not the

02:19PM  5    plaintiff.  But in terms of the other ones, what I would

02:19PM  6    do, Your Honor, is supplement if there's things that

02:19PM  7    have not been produced and then amend the responses to

02:19PM  8    say that everything has been produced and that this is a

02:20PM  9    full copy of all responsive documents.

02:20PM  10        THE COURT:  So 14C and D is the only one that, as I

02:20PM  11   understand it, Mr. Wynne, Elite Medical Wellness

02:20PM  12   contends they should not have to respond to; is that

02:20PM  13   fair?

02:20PM  14        MR. WYNNE:  That's correct, Your Honor.

02:20PM  15        THE COURT:  Now tell me why 14C and D are

02:20PM  16   objectionable.

02:20PM  17        MR. WYNNE:  For a few reasons.  One, the most

02:20PM  18   simplistic, is we do not have the capacity to identify a

02:20PM  19   patient by their counsel and so the request is unable to

02:20PM  20   comply with as its written.  Two, it would require us to

02:21PM  21   divulge information that pertains to non-party

02:21PM  22   plaintiff's or non-party patients and that's protected

02:21PM  23   information under federal and state law, Your Honor.

02:21PM  24        THE COURT:  That it?

02:21PM  25        MR. WYNNE:  That's it.

02:21PM 1    THE COURT:  All right.  Now, with respect to 14C

02:22PM 2    and D, I'm going to get some more clarification on that

02:22PM 3    request.  But as I understood it, Mr. Flores reads or

02:22PM 4    interprets that request to say we want the amounts paid

02:22PM 5    to Elite Medical Wellness with respect to other Arnold &

02:22PM 6    Itkin patients that have been treated by Elite Medical

02:22PM 7    Wellness and those will be the patients that Halliburton

02:22PM 8    will identify as being Arnold & Itkin clients.

02:22PM 9    MR. WYNNE:  Correct.  And so, obviously, to the

02:22PM 10   extent that they have the names or identifying

02:22PM 11   information of individuals, then we can obviously go

02:23PM 12   pull the billing and payment records for those

02:23PM 13   individuals.  So just we can't -- we don't have the

02:23PM 14   capability without going through an individual file to

02:23PM 15   identify who has a lawyer, if they have a lawyer,

02:23PM 16   whatnot.

02:23PM 17   THE COURT:  So if I narrow the scope of 14 to

02:23PM 18   exactly that, to allow Halliburton to obtain the payment

02:23PM 19   information with respect to individual persons that they

02:23PM 20   identify as Arthur -- Arnold & Itkin -- I don't know why

02:23PM 21   I keep wanting to call them Arthur & Itkin -- but Arnold

02:23PM 22   & Itkin clients, Elite's able to pull that information

02:23PM 23   and provide that information?

02:23PM 24   MR. WYNNE:  We would be able to do that, Your

02:23PM 25   Honor.

02:23PM 1    THE COURT:  You object --

02:23PM 2    MR. WYNNE:  We would object to it but we would have

02:23PM 3 that capability, similar to the *Boutte* matter where if

02:23PM 4 you identify -- for that one they identified the Asgard

02:24PM 5 people so we were able to go and, all right, this

02:24PM 6 gentleman's name, go pull that billing record and then

02:24PM 7 redact it and produce that in that case.  So we would

02:24PM 8 have the capability.  We would still object to it, if

02:24PM 9 that makes sense.

02:24PM 10   THE COURT:  It makes sense, but I've got concern at

02:24PM 11 this point about whether or not Elite's in a position to

02:24PM 12 object to any of these responses -- to any of these

02:24PM 13 requests, quite frankly.  And so, I mean, let me

02:24PM 14 contemplate because I still think that information would

02:24PM 15 be relevant for purposes of what they're doing.  Again,

02:24PM 16 this is properly limited, I think similar to what we did

02:24PM 17 in the *Boutte* matter.

02:24PM 18   MR. WYNNE:  Obviously, the Court doesn't need my

02:24PM 19 permission to do anything.  What I would say in response

02:24PM 20 to that in terms of a potential waiver argument, I would

02:24PM 21 say usually a waiver involves some sort of intentional

02:25PM 22 relinquishment of a known right.  Here, Rule 45

02:25PM 23 obviously requires compliance but it requires a good

02:25PM 24 faith compliance.  And here, that's what would happen,

02:25PM 25 we would make the argument.

Deidre D. Juranka, CRR
United States Court Reporter
Western District of Louisiana

02:25PM  1          And then, two, Rule 45, even with a non-response,

02:25PM  2   Rule 45 allows the Court to take up a privilege or take

02:25PM  3   up a trade secret argument or objection subsequent to

02:25PM  4   the compliance date.  And so given that this raises

02:25PM  5   implications that concern other parties' privacy rights,

02:25PM  6   healthcare rights, as well as financial, you know,

02:25PM  7   financial well-being or financial status, I would

02:25PM  8   suggest that the Court is within its discretion if it

02:25PM  9   chooses to hear those objections notwithstanding the

02:26PM  10  waiver argument.

02:26PM  11         THE COURT:  Well, I think cognizant of that,

02:26PM  12  Mr. Wynne, if I allow that information or require that

02:26PM  13  information to be produced, the discussion that we've

02:26PM  14  had about the redaction of those records, the Court's

02:26PM  15  position right now is simply what they're entitled to

02:26PM  16  know is, with respect to those Arnold & Itkin clients

02:26PM  17  that they may identify, to find out how much Elite

02:26PM  18  Medical Wellness got paid for each one of them.  So at

02:26PM  19  that point it's a fairly simple response, so to speak,

02:26PM  20  to give them the information.  There'd be no need to

02:26PM  21  disclose anything patient related, and they're providing

02:26PM  22  you the names.  So there's an issue about the

02:26PM  23  information to begin with there, that it's already out,

02:26PM  24  so to speak, in the public domain from that perspective.

02:26PM  25  So --

02:26PM   1        MR. WYNNE:  Possibly.
02:26PM   2        THE COURT:  -- those -- so that information I
02:26PM   3   think -- or those concerns I think would be addressed in
02:27PM   4   the manner in which the Court would anticipate allowing
02:27PM   5   that production if I do ultimately allow it.  All right.
02:27PM   6   Mr. Wynne, anything further?
02:27PM   7        MR. WYNNE:  Unless -- you know, if you're done
02:27PM   8   taking a bite out of my butt, I'm ready to sit down,
02:27PM   9   Your Honor.
02:27PM  10        THE COURT:  I hope it doesn't seem that way,
02:27PM  11   Mr. Wynne; but I'm a discovery guy, right.  What ends up
02:27PM  12   in court, gets admitted, that's for somebody else's
02:27PM  13   determination; but I tend to see that discovery is
02:27PM  14   supposed to be a fairly liberal process.  I realize
02:27PM  15   we're involving a non-party here; but I do believe the
02:27PM  16   requests in this particular subpoena are pretty
02:27PM  17   specific, for the most part limited to the plaintiff,
02:27PM  18   and I'm concerned with the fact that Elite did not
02:27PM  19   respond what I consider to be more timely and more
02:27PM  20   appropriately in this case.  You and I have been around
02:27PM  21   this tree before so I think you kind of know where I'm
02:28PM  22   coming from.
02:28PM  23        MR. WYNNE:  No, I certainly do.  If I'd been aware
02:28PM  24   of the subpoena and whatnot prior to January of this
02:28PM  25   year, it might have been handled differently.

02:28PM  1    THE COURT:  Like I said, Dr. Hayes is not here.
02:28PM  2    Ms. McGroarty is.  I'm not speaking to them because I
02:28PM  3    can't tell them how to run their business or do things,
02:28PM  4    but they would probably find themselves much better
02:28PM  5    served to call you first.  So we'll leave it at that for
02:28PM  6    right now.  Let me speak with Mr. Flores.  Thank you,
02:28PM  7    sir.
02:28PM  8         Mr. Flores, come on back up real quick.  With
02:28PM  9    respect to the Access Healthcare Management agreement
02:28PM  10   that is at issue, I do agree with Mr. Wynne.  I think it
02:28PM  11   would be appropriate to protect that agreement for
02:28PM  12   purposes of this discovery and to keep it limited to
02:28PM  13   your use in this particular litigation.  Do you have any
02:28PM  14   objection to that or is that agreeable to you and your
02:29PM  15   client?
02:29PM  16        MR. FLORES:  We have no objection, Your Honor.
02:29PM  17        THE COURT:  I will allow you, if you like, to
02:29PM  18   briefly respond to anything Mr. Wynne said at this
02:29PM  19   point.  One more point of clarification.  I don't read
02:29PM  20   Request 14 the way you have described it; but I'm much
02:29PM  21   more amenable to the way you describe 14 than the way
02:29PM  22   it's actually written and the way I interpret it, if
02:29PM  23   that makes some sense.  So if I am inclined to allow
02:29PM  24   that information to be discovered, my anticipation would
02:29PM  25   be to allow you to obtain from Elite Medical Wellness

Deidre D. Juranka, CRR
United States Court Reporter
Western District of Louisiana

02:29PM  1    information pertaining to the amounts paid to Elite

02:29PM  2    Medical Wellness with respect to services rendered to

02:29PM  3    Arnold & Itkin clients that you would identify for Elite

02:30PM  4    Medical Wellness.  That would be about the scope of what

02:30PM  5    I'd be willing to do with respect to what 14 says.

02:30PM  6         MR. FLORES:  Understood, Your Honor.

02:30PM  7         THE COURT:  Is that acceptable to you and your

02:30PM  8    client?

02:30PM  9         MR. FLORES:  I think we're on the same page, Your

02:30PM  10   Honor.  Thank you.

02:30PM  11        THE COURT:  Anything else you want to offer, I'm

02:30PM  12   sorry, in response to anything Mr. Wynne said?

02:30PM  13        MR. FLORES:  No, sir.

02:30PM  14        THE COURT:  All right.  Thank you.  Then in

02:30PM  15   connection with the motion to compel, as indicated

02:31PM  16   previously, the Court understands and I believe the

02:31PM  17   parties have agreed that at this time the following

02:31PM  18   requested items on Exhibit A to the subpoena originally

02:31PM  19   served in this matter require further attention.  Those

02:31PM  20   are Requests No. 6, 7, 8, 9, 10, 11, 12, 14C and D, 16,

02:31PM  21   18, 19, 20, and 21.  Now, that being the case, the Court

02:31PM  22   is going to grant the motion and order that Elite

02:31PM  23   Medical Wellness respond to each of those identified

02:31PM  24   requests.  To the extent you have previously responded

02:32PM  25   to any of those requests, to supplement those responses

02:32PM  1    with the caveat that Request 14, as agreed by the
02:32PM  2    parties today, will be construed as Halliburton
02:32PM  3    requesting that Elite Medical Wellness provide
02:32PM  4    information pertaining to the billing rates charged and
02:33PM  5    the amounts paid on behalf of Arnold & Itkin clients who
02:33PM  6    have been treated by Elite Medical Wellness as
02:33PM  7    identified by Halliburton.  The records that will be
02:33PM  8    produced evidencing those rates and payments will be
02:33PM  9    appropriately redacted to remove any and all patient
02:33PM  10   health information and other confidential patient
02:33PM  11   information; by that I mean addresses, phone numbers,
02:33PM  12   Social Security numbers, any other personally
02:33PM  13   identifying information other than the name.  Since that
02:34PM  14   name's going to be provided by Halliburton to Elite
02:34PM  15   Medical Wellness, I don't see any problem with those
02:34PM  16   names remaining on the billing documents, whatnot.  But
02:34PM  17   what we want to see is the rates charged and the amounts
02:34PM  18   paid.
02:34PM  19        Halliburton is going to provide to Mr. Wynne,
02:34PM  20   counsel for Elite Medical Wellness, the list of Arnold &
02:34PM  21   Itkin clients to be addressed in response to request
02:34PM  22   No. 14 within 14 days from today's date.  Elite Medical
02:35PM  23   will have 30 days from today's date to provide its
02:35PM  24   supplemental responses to all of the requests, including
02:35PM  25   Request No. 14 as modified herein.

02:35PM  1      Elite's requests or responses need to be certified
02:36PM  2   by Elite Medical Wellness, I'm sorry, that the responses
02:36PM  3   are -- and we'll cover this in a written order so the
02:37PM  4   language may be a little more artfully spelled out.  But
02:37PM  5   essentially, Mr. Wynne, I want a certification by Elite
02:37PM  6   Medical Wellness that the responses are complete and
02:37PM  7   accurate following a reasonable and diligent
02:37PM  8   investigation on their part.
02:37PM  9      All right.  Any questions about the order?  As I
02:37PM  10  indicated, I will issue a written order consistent with
02:37PM  11  these oral reasons to be clear.  Mr. Flores, any
02:37PM  12  questions about the Court's order at this time?
02:37PM  13           MR. FLORES:  No, Your Honor.
02:37PM  14           THE COURT:  Mr. Wynne, any questions?
02:37PM  15           MR. WYNNE:  Only thing I'd say, I may have misheard
02:37PM  16  it, if there would be some sort of protective order
02:38PM  17  about the agreement between Elite and Access.
02:38PM  18           THE COURT:  Yes.  Yes.  Mr. Wynne, what I'd like
02:38PM  19  for you to do is prepare and submit to Mr. Flores within
02:38PM  20  seven days of today's date a draft of the proposed
02:38PM  21  protective order for his consideration.  Mr. Flores,
02:38PM  22  within seven days of your receipt of that, you'll either
02:38PM  23  execute it or you guys submit a joint motion to me with
02:38PM  24  the proposed protective order and any objections or
02:38PM  25  comments, additions that you propose for it; and the

02:38PM    1          Court will address it from there so we'll have that

02:38PM    2     order in place before the 30 day timeframe runs on you.

02:38PM    3               MR. FLORES:  Yes, Your Honor.

02:38PM    4               THE COURT:  Okay.  Now, before we move on from the

02:39PM    5     motion to compel, I'll ask one more time to make sure.

02:39PM    6     Mr. Flores, have I covered everything?

02:39PM    7               MR. FLORES:  Yes, Your Honor.

02:39PM    8               THE COURT:  Mr. Wynne, have I covered everything?

02:39PM    9               MR. WYNNE:  Yes, Your Honor.

02:39PM   10               THE COURT:  All right.  Now let's move on to the

02:40PM   11     motion for protection.

02:40PM   12               MR. WYNNE:  Good afternoon again, Your Honor.

02:40PM   13     Elite Medical Wellness has filed a motion for protection

02:40PM   14     in this case from a second deposition on topics which

02:40PM   15     either were directly addressed at an earlier deposition

02:40PM   16     or could have been directly addressed at an earlier

02:40PM   17     deposition.  To this point, I would represent to the

02:40PM   18     Court that on January 9th, 2025 Mr. Flores took a

02:40PM   19     four-hour deposition of Dr. Patrick Hayes in this case.

02:40PM   20     Then on Monday, January 27th, a subsequent deposition

02:40PM   21     notice was served for the deposition of Elite Medical.

02:41PM   22     The deposition was purported to be held that Friday,

02:41PM   23     three days later, on January 31st, 2025.  My

02:41PM   24     understanding is that that day may have been the

02:41PM   25     discovery cutoff in the underlying maintenance and cure

02:41PM 1    action.  I do not know for sure.

02:41PM 2        The whole subject matter of the deposition request

02:41PM 3    is topics related to the relationship between Access

02:41PM 4    Healthcare and Elite Medical.  Dr. Hayes addressed all

02:41PM 5    those questions in his deposition.  I specifically point

02:41PM 6    the Court to Page 36 and the following few pages as well

02:41PM 7    as Page 125 through the end of the deposition.  Those

02:41PM 8    correspond to Exhibit 2 and Exhibit 4 of the deposition

02:41PM 9    which is all the information connected to Access

02:42PM 10   Healthcare and Elite Medical Wellness.

02:42PM 11       For these reasons, we'd move for protection from a

02:42PM 12   second deposition.  It's an unnecessary and undue

02:42PM 13   burden, and it certainly did not provide enough time to

02:42PM 14   be complied with.  And I believe some of the topics as

02:42PM 15   written would require the disclosure of protected health

02:42PM 16   information related to non-party patients.  So for those

02:42PM 17   reasons, Your Honor, we'd move for protection from the

02:42PM 18   deposition subpoena.

02:42PM 19       THE COURT:  First of all, identify for me of the 13

02:42PM 20   topics, which ones specifically do you suggest would

02:42PM 21   require disclosure of confidential or protected patient

02:42PM 22   health information, Mr. Wynne?

02:42PM 23       MR. WYNNE:  So for those, let's say potentially

02:43PM 24   No. 7, potentially No. 8, potentially No. 10,

02:43PM 25   potentially No. 11, and that would be it, Your Honor.

02:44PM  1     THE COURT:  All right.  Let me ask you, Mr. Wynne,

02:44PM  2  with regard to Items 7, 8, 10, and 11 that you've

02:45PM  3  identified, and I'm going to add No. 12 to it as well,

02:45PM  4  does Elite Medical Wellness have an ability to search

02:45PM  5  its patient files to determine the referral source of

02:45PM  6  any particular patient?  When I say the ability to

02:45PM  7  search those files, obviously they can sit down and pull

02:45PM  8  every physical folder off a shelf and somebody sit there

02:46PM  9  and flip through them; but also, quite obviously, we're

02:46PM  10  not going to do that in this case.  Is there some other

02:46PM  11  way electronically that they have records stored with

02:46PM  12  respect to patients, to your knowledge, that they could

02:46PM  13  search and be able to identify the persons who are

02:46PM  14  Arnold & Itkin referrals or Access Healthcare Management

02:46PM  15  referrals or something of that nature?

02:46PM  16     MR. WYNNE:  Your Honor, we don't have that

02:46PM  17  capability.  And I would point to Dr. Hayes's prior

02:46PM  18  deposition on January 9th when he was asked those

02:46PM  19  questions by Mr. Flores and he testified to such, which

02:46PM  20  is in the Court's record.

02:47PM  21     THE COURT:  Now, my only other question for you,

02:47PM  22  Mr. Wynne, is you refer to this as a second deposition

02:47PM  23  of Dr. Hayes; but, of course, this is a 30(b)(6)

02:47PM  24  deposition of the entity Elite Medical Wellness, LLC, or

02:47PM  25  Inc. or whatever they happen to be.  So the appropriate

02:47PM  1    representative may be Dr. Hayes, it may not be

02:47PM  2    Dr. Hayes.  It may be Dr. Hayes and one or more other

02:47PM  3    individuals depending on how they need to be prepared to

02:47PM  4    respond to these deposition questions.  So I think it's

02:47PM  5    a bit of a misnomer to suggest that it's a second

02:47PM  6    deposition of Dr. Hayes because now you'd agree with me

02:47PM  7    the purpose of a 30(b)(6) is now to commit the

02:47PM  8    organization to positions and answers to questions as

02:48PM  9    opposed to the individual which was Dr. Hayes in his

02:48PM  10    individual testimony.

02:48PM  11        MR. WYNNE:  You know, yes and no, obviously, Your

02:48PM  12    Honor.  Obviously, yes is that an entity is separate and

02:48PM  13    apart from its members or its managers.  As we all know,

02:48PM  14    in a lot of cases the same person serves in both

02:48PM  15    capacities and can answer and testify in both capacities

02:48PM  16    simultaneously.  And because Dr. Hayes is the sole

02:48PM  17    manager and sole member, he would be the corporate

02:48PM  18    representative and he would be answering questions about

02:48PM  19    the same documents he already answered the questions

02:48PM  20    about.  And Dr. Hayes, whether he shows up at trial in,

02:48PM  21    you know, the Dr. Hayes hat or shows up as Elite

02:48PM  22    Medical, it's going to be the same person testifying on

02:48PM  23    the same subject matter.

02:48PM  24        THE COURT:  And I would agree with that.  My only

02:48PM  25    concern, and I want you to respond to this for me very

02:49PM 1    briefly -- well, not briefly.  Take as much time as you

02:49PM 2    need to.  Halliburton has indicated in their briefs that

02:49PM 3    there were a number of these areas of conversation that

02:49PM 4    Dr. Hayes was not able to respond to but instead

02:49PM 5    deferred to Ms. McGroarty and others.  So that suggests

02:49PM 6    to me that either, one, he wasn't prepared for those

02:49PM 7    subject matters, which for an individual deposition he

02:49PM 8    may not have needed to be, or two, he does lack that

02:49PM 9    knowledge and we need to go to somebody else beyond him.

02:49PM 10   So tell me what's --

02:49PM 11        MR. WYNNE:  So, to that, I spent some time reading

02:49PM 12   and rereading the deposition because I noticed that as

02:49PM 13   well in their responsive motion for protection.  The

02:49PM 14   only thing that I found that he could not answer was

02:49PM 15   where are the payments kept, like where are the checks

02:49PM 16   kept; and to that he deferred to Caitlin, Ms. McGroarty.

02:50PM 17   But in terms of, we look at the actual topics, topics 1

02:50PM 18   through 6 pertain primarily to Access Healthcare.  He

02:50PM 19   answered all those questions and he would be the one to

02:50PM 20   answer those questions because he was a signatory on the

02:50PM 21   agreement.  In terms of 7 through 13, those are the

02:50PM 22   topics that are primarily concerned about the total

02:50PM 23   number of Arnold & Itkin or Access Healthcare patients

02:50PM 24   or referrals.  Again, Dr. Hayes testified about that and

02:50PM 25   said that it is impossible for them to calculate that

02:50PM  1      information.

02:50PM  2          So assuming the corporate rep would show up, you

02:50PM  3      know, Dr. Hayes, there would be no new information to

02:50PM  4      be, you know, explored.  It's been discussed.  We know

02:50PM  5      exactly what the arrangement is, how the billing terms

02:50PM  6      work between Access and Elite.  They have the agreement.

02:51PM  7      He acknowledged the agreement and says that's the one

02:51PM  8      that's currently in effect, this is how we exchange

02:51PM  9      referrals and payments.  Then in terms of the total

02:51PM  10     number of patients or patient population, he said

02:51PM  11     there's no way for us to calculate that.  So if we go

02:51PM  12     one by one through each of the individual topics for the

02:51PM  13     corporate rep, that information is already known or

02:51PM  14     incapable of being known.  And that's why I would

02:51PM  15     suggest that on January 27th we got a deposition for

02:51PM  16     January 31st which I believe, again, was the discovery

02:51PM  17     cutoff, which has happened in a few of the cases

02:51PM  18     involving the medical providers in Arnold & Itkin

02:51PM  19     matters.

02:51PM  20         So for all those reasons, it doesn't seem to me

02:51PM  21     that there's a need for a second deposition, whether

02:51PM  22     it's of technically the corporate rep or technically

02:51PM  23     Dr. Hayes in his individual capacity.  It would all be

02:52PM  24     the same, if that makes sense.

02:52PM  25         THE COURT:  Mr. Wynne, anything else you want to

02:52PM   1    offer at this time?

02:52PM   2         MR. WYNNE:  No, Your Honor.

02:52PM   3         THE COURT:  Mr. Flores.

02:52PM   4         MR. FLORES:  Thank you, Your Honor.

02:52PM   5         THE COURT:  Here's my first question to you,

02:52PM   6    Mr. Flores.

02:52PM   7         MR. FLORES:  Yes, sir.

02:52PM   8         THE COURT:  I have not reviewed the entirety of

02:52PM   9    Dr. Hayes's deposition, quite frankly, that was taken in

02:52PM   10   this case.  Is it possible, if Dr. Hayes is willing to

02:52PM   11   do so, for you guys to accept his deposition with

02:52PM   12   respect to those subject areas he was able to opine on

02:52PM   13   and then limit the scope of the 30(b)(6) for the

02:52PM   14   corporation?

02:52PM   15        MR. FLORES:  Your Honor, I think we would be

02:52PM   16   willing, as a general matter, to accept his individual

02:52PM   17   deposition as, you know, the company's deposition with

02:52PM   18   respect to the terms of the agreement that we were able

02:52PM   19   to ask him about in that deposition.  So we had an

02:53PM   20   incomplete copy of the agreement with Access Healthcare

02:53PM   21   Management and we did question him about that.  And so I

02:53PM   22   think to the extent that he answered those questions,

02:53PM   23   we'd be able to accept that.  However, there was at

02:53PM   24   least a page that was missing and there was an entire

02:53PM   25   exhibit, a fee schedule, that was missing and so we

02:53PM  1    weren't able to ask him about that.  So I think to the

02:53PM  2    extent that we were able to ask him about the pages we

02:53PM  3    had, we'd be fine accepting that as his company's

02:53PM  4    testimony.

02:53PM  5         THE COURT:  What I hear there, Mr. Flores, is when

02:53PM  6    we get the whole agreement we're going to ask him about

02:53PM  7    the whole agreement.  So I don't know how much of a

02:53PM  8    stipulation that would ultimately be at the end of the

02:53PM  9    day, but let me contemplate that a little bit.  I'm

02:53PM  10   going to let you go ahead and respond to Mr. Wynne's

02:53PM  11   comments.  Let me think this through a little bit while

02:54PM  12   I'm listening.

02:54PM  13        MR. FLORES:  Okay, Your Honor.  So one of

02:54PM  14   Mr. Wynne's points was that this presents an undue

02:54PM  15   burden on Elite Medical Wellness.  Your Honor brought up

02:54PM  16   the point that we were going to make which is this is

02:54PM  17   not a second deposition and there were issues that

02:54PM  18   Dr. Hayes was not able to address in his individual

02:54PM  19   deposition and deferred to others, including

02:54PM  20   Mr. McGroarty who is the practice manager, specifically

02:54PM  21   with respect to billing and billing related matters

02:54PM  22   which are a large part of what we're interested in at

02:54PM  23   this point in discovery.  So this is not a second

02:54PM  24   deposition, so to speak.

02:54PM  25        He also denied knowing how many patients Access

02:54PM   1       refers to Elite and what percentage of his patients that

02:54PM   2       is.  That's the precise rationale for a 30(b)(6)

02:54PM   3       deposition, is no one witness is necessarily going to

02:55PM   4       know information such as that; but by reviewing records

02:55PM   5       and preparing the corporate representative, the company

02:55PM   6       can then present somebody who will know that

02:55PM   7       information.  Then as far as --

02:55PM   8            THE COURT:  Mr. Flores, let me stop you there

02:55PM   9       because one of the concerns that I do have is whether or

02:55PM  10       not Elite has the ability to determine which of its

02:55PM  11       patients were referred by Arnold & Itkin or Access

02:55PM  12       Healthcare or anybody else, so to speak, and I don't

02:55PM  13       know that they do.  So the questions that you want to

02:55PM  14       ask in this deposition may be simply answered with we

02:55PM  15       don't know.  And it may be that "I don't know,"

02:55PM  16       Dr. Hayes, or "I don't know," Ms. McGroarty, or whoever

02:55PM  17       else may come and appear for this deposition because

02:55PM  18       they're not able to discern that information without

02:55PM  19       some, what I would consider to be, overly burdensome

02:56PM  20       effort.

02:56PM  21            Again, I am not going to order Elite Medical

02:56PM  22       Wellness to go pull every patient file off a shelf and

02:56PM  23       start thumbing through pages to see is there something

02:56PM  24       that references Arnold & Itkin in this particular

02:56PM  25       patient's file.  So what I don't want to do is order a

02:56PM    1    deposition on subject matters that ultimately are going
02:56PM    2    to lead to more motion practice.  So I'm trying to head
02:56PM    3    that off a little bit, I think, by not necessarily
02:56PM    4    saying you can't have the deposition, I'm still
02:56PM    5    contemplating that, but I guess maybe prepping you for
02:56PM    6    the fact that you may get some answers from some of
02:56PM    7    these witnesses that aren't going to be any more
02:56PM    8    enlightening than the questions you ask.  Does that make
02:56PM    9    sense?
02:56PM   10         MR. FLORES:  It does, Your Honor.  I understand.
02:56PM   11    If you were to look at Exhibit 7 to our motion to compel
02:56PM   12    compliance with the document subpoena, what you would
02:56PM   13    see there is a referral e-mail from Morgan Gill at
02:57PM   14    Access Healthcare Management to Kourtney Sittig at Elite
02:57PM   15    Medical Wellness.  And the second page of that exhibit
02:57PM   16    is an attachment that to e-mail which is kind of a
02:57PM   17    referral slip, if you will, an electronic referral slip.
02:57PM   18    And so you'll notice that Morgan Gill from Access
02:57PM   19    Healthcare who sent the referral has an
02:57PM   20    @accesshealthcare.biz e-mail address.  So it would seem
02:57PM   21    to us that there are relatively unburdensome ways for
02:57PM   22    Elite to figure out which referrals came from Access
02:57PM   23    Healthcare, which referrals came from arnolditkin.com.
02:57PM   24    They simply do a search of their Outlook inboxes and
02:57PM   25    there's a search tool, search box.  They could simply,

02:57PM  1      for example, just type in "@accesshealthcare.biz," see
02:57PM  2      what pops up, and simply categorize those e-mails by
02:58PM  3      patient.  Same thing with @arnolditkin.com which is the
02:58PM  4      e-mail address for Arnold & Itkin personnel, which we
02:58PM  5      know from personal experience.  And also, one of the
02:58PM  6      exhibits to our motion to compel compliance with the
02:58PM  7      document subpoena contains an e-mail from -- it's
02:58PM  8      Exhibit 14 to that motion, contains an e-mail from
02:58PM  9      Miranda Owens @arnolditkin.com.  So simply searching
02:58PM  10     their Outlook inboxes by these e-mail addresses would
02:58PM  11     give them all the e-mails from Arnold & Itkin personnel,
02:58PM  12     all the e-mails from Access Healthcare personnel, and
02:58PM  13     then would just be simply a matter of categorizing them
02:58PM  14     by patient.
02:58PM  15          That's one example, Your Honor.  Obviously, we
02:58PM  16     don't know what all their filing system looks like.  I
02:58PM  17     guess our other kind of overarching point would be we
02:59PM  18     would have some concerns about allowing a company to
02:59PM  19     kind of use as a shield their filing practices to shield
02:59PM  20     documents from discovery.  Going forward, that's going
02:59PM  21     to be Elite Medical Wellness's response every time
02:59PM  22     information like this is sought, "We simply can't do it.
02:59PM  23     It's not feasible."  So we would have some concern about
02:59PM  24     sort of propagating that practice at Elite Medical
02:59PM  25     Wellness.  And we've provided at least one example

02:59PM    1    showing that it's really not that burdensome.

02:59PM    2         THE COURT:  Mr. Flores, I can assure you that Elite

02:59PM    3    Medical Wellness is not a pure paper driven

02:59PM    4    organization.  I don't know that those even exist

02:59PM    5    anymore.  So there's certainly some electronic

02:59PM    6    capabilities over there.  I just don't know what the

02:59PM    7    scope of those capabilities are and so I'm kind of

02:59PM    8    giving you a line as to where I'm not willing to cross

02:59PM    9    at this point --

02:59PM    10        MR. FLORES:  Sure.  Sure.

02:59PM    11        THE COURT:  -- for purposes of what we're doing

03:00PM    12   here, to attack the credibility of Dr. Hayes in this

03:00PM    13   particular litigation.  So I'm not suggesting that

03:00PM    14   there's not a way for them to search.  I don't know

03:00PM    15   their system either to be quite frank, but I've had that

03:00PM    16   representation made before.  And I believe in the *Boutte*

03:00PM    17   matter there was orders directed at Elite Medical

03:00PM    18   Wellness to search e-mails and other electronic

03:00PM    19   information that was available to them, which I would

03:00PM    20   anticipate would be the case here.  If the deposition

03:00PM    21   goes forward, you get a chance to ask them that, find

03:00PM    22   out what they searched and what they didn't search to

03:00PM    23   determine that.

03:00PM    24        MR. FLORES:  Yes, Your Honor.  Understood.

03:00PM    25        THE COURT:  My concern was if they can't find that

03:00PM  1    information you may get those kinds of answers.

03:00PM  2         Now, the next issue that I have is Items 7, 8, 9,

03:00PM  3    10, 11, and 12 with respect to Mr. Wynne's contention

03:00PM  4    that those could require disclosing patient health

03:01PM  5    information, protected health information.

03:01PM  6         MR. FLORES:  Yes, Your Honor.

03:01PM  7         THE COURT:  Quite frankly, giving those the limited

03:01PM  8    scope read that I think they asked for, you asked me for

03:01PM  9    the number of patients, I can give you a number.  I

03:01PM  10   don't have to tell the patients by name.  I don't have

03:01PM  11   to tell you anything about their health conditions.

03:01PM  12        MR. FLORES:  Exactly.

03:01PM  13        THE COURT:  I think each of those areas could be

03:01PM  14   answered without the need to explore any sort of private

03:01PM  15   patient health information.  That said, if I do allow

03:01PM  16   the deposition to go forward, I would limit you with

03:01PM  17   respect to each of those categories not to be able to

03:01PM  18   inquire into and obtain any protected health information

03:01PM  19   or require Elite to disclose that protected health

03:01PM  20   information.  If you get to that point and feel that's

03:01PM  21   relevant, that's going to require a different and new

03:02PM  22   motion.

03:02PM  23        MR. FLORES:  Understood, Your Honor.

03:02PM  24        THE COURT:  Anything else you want to offer with

03:02PM  25   respect to the deposition?

03:02PM 1        MR. FLORES:  Just along the lines of what you just

03:02PM 2    mentioned.  Those particular topics seem to us to

03:02PM 3    address the number of patients, number of referrals,

03:02PM 4    amounts paid, and who paid, not personally identifiable

03:02PM 5    information of the underlying patients, Your Honor.  And

03:02PM 6    that's all I have, Your Honor.  Thank you.

03:02PM 7        THE COURT:  Mr. Wynne, you want to respond?

03:02PM 8        MR. WYNNE:  Yes, Your Honor.  My original

03:02PM 9    understanding of the reason why the deposition of Elite

03:02PM 10   Medical Wellness was requested, whether we call it a

03:02PM 11   second deposition or completely separate deposition, was

03:02PM 12   because there was information Dr. Hayes simply could not

03:02PM 13   answer.  I have not heard what that information is.

03:03PM 14   Mr. Flores has not pointed it out.  Everything from

03:03PM 15   Topics 1 through 6 about Access Healthcare Dr. Hayes

03:03PM 16   answered.  The issues between 7 and 13 about the number

03:03PM 17   of patients, the amount of money, he answered.  I point

03:03PM 18   to Page 135 of his deposition and Page 139 where he

03:03PM 19   explains to Mr. Flores that the information he is

03:03PM 20   seeking is not capable of being generated unless he

03:03PM 21   spent, I believe he estimates, a thousand man hours to

03:03PM 22   go through it all.  And so the evidentiary basis in

03:03PM 23   support is that is there.  The issues that are relevant

03:03PM 24   to this case, meaning the amounts charged and the

03:03PM 25   amounts paid, is already known or knowable; and those

03:03PM   1    are not even the topics 1 through 13.  So I would

03:03PM   2    respectfully suggest to the Court that a second

03:04PM   3    deposition or a first deposition of the corporate entity

03:04PM   4    is unnecessary for this case.  Thank you.

03:04PM   5         THE COURT:  With respect to the motion for

03:05PM   6    protection filed by Elite Medical Wellness, the Court is

03:05PM   7    going to deny the motion in part and allow the 30(b)(6)

03:05PM   8    deposition of Elite Medical Wellness to go forward.

03:05PM   9    Now, under Rule 30(b)(6), Elite Medical has the

03:05PM   10   obligation to prepare and present an appropriate witness

03:05PM   11   or witnesses to address each of the 13 topics that have

03:05PM   12   been included in the Exhibit A that was attached to the

03:06PM   13   notice and the subpoena issued previously in this

03:06PM   14   matter.  Mr. Wynne, that requires reasonable and

03:06PM   15   diligent preparation but it does not require

03:06PM   16   extraordinary efforts.  Now, I'll leave that within your

03:06PM   17   judgment and Mr. Flores will be able to explore in that

03:06PM   18   deposition.  To the extent that he gets answers that

03:06PM   19   something was not possible or obtainable, then those

03:06PM   20   issues can be brought back to this Court if need be

03:06PM   21   following that deposition.

03:06PM   22        I'm going to grant the motion in part insofar as

03:06PM   23   the timeframe that was originally afforded for that

03:06PM   24   deposition was unreasonable under the rules.  We will

03:07PM   25   reset that deposition.  That deposition is to occur

03:07PM  1    within 45 days of today's date.  Mr. Wynne, within seven

03:07PM  2    days from today you will provide --

03:07PM  3         MR. WYNNE:  Proposed dates.

03:07PM  4         THE COURT:  -- proposed dates.  Or at least, as

03:08PM  5    opposed to proposed dates, you'll provide availability

03:08PM  6    for the corporate representative or representatives who

03:08PM  7    will appear.

03:08PM  8         The Court will note on the record that with respect

03:08PM  9    to any of the items of inquiry on this exhibit that the

03:08PM  10   defendants are not entitled to any protected health

03:08PM  11   information or personal identifying information with

03:08PM  12   respect to any Elite Medical Wellness patients other

03:08PM  13   than Mr. Perry.  Again, I believe that at least

03:08PM  14   Categories 7 through 12 can be responded to without

03:08PM  15   having to venture into that area.

03:09PM  16        Mr. Wynne, this was your motion.  You have any

03:09PM  17   questions about the Court's order at this time?

03:09PM  18        MR. WYNNE:  None, Your Honor.

03:09PM  19        THE COURT:  Mr. Flores, any questions?

03:09PM  20        MR. FLORES:  No, Your Honor.

03:09PM  21        THE COURT:  Gentlemen, I think that concludes

03:09PM  22   everything that was before the Court on the docket in

03:09PM  23   this case.  Mr. Wynne, is there anything further from

03:09PM  24   Elite Medical Wellness?

03:09PM  25        MR. WYNNE:  No, Your Honor.

03:09PM  1          THE COURT:  Mr. Flores, anything further from

03:09PM  2    Halliburton?

03:09PM  3          MR. FLORES:  No, Your Honor.

03:09PM  4          THE COURT:  All right.  Gentlemen, thank you very

03:10PM  5    much.  Appreciate the argument and the time.  Apologize

03:10PM  6    this took a little longer than I expected; but we're

03:10PM  7    trying to get things resolved and get this case moving,

03:10PM  8    get y'all down the road.  All right.  Thank you very

03:10PM  9    much.  That concludes this matter on the record.

10                  (Proceedings adjourned.)

11

12

13                  *  *  *  *  *  *  *

14

15

16                        **CERTIFICATE**

17

18       I hereby certify this 15th day of April, 2025 that the

19    foregoing is, to the best of my ability and understanding, a

20    true and correct transcript of the proceedings in the

21    above-entitled matter.

22

23                          *Deidre D. Juranka*
                      Deidre D. Juranka, CRR
24                    Official Court Reporter

25